RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 11a0205p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
————————————

UNITED STATES OF AMERICA,
　　　　　　　　　　　*Plaintiff-Appellee,*

　　　*v.*

ROGER DALE TRENT,
　　　　　　　　　　　*Defendant-Appellant.*

No. 08-4482

————————————

Appeal from the United States District Court
for the Southern District of Ohio at Dayton.
No. 07-00196-001—Walter H. Rice, District Judge.

Argued: June 9, 2011

Decided and Filed: August 5, 2011

Before: MOORE and GIBBONS, Circuit Judges; BORMAN, District Judge.[*]

————————————

## COUNSEL

**ARGUED:** Kevin M. Schad, FEDERAL PUBLIC DEFENDER'S OFFICE, Cincinnati, Ohio, for Appellant. Christopher K. Barnes, ASSISTANT UNITED STATES ATTORNEY, Cincinnati, Ohio, for Appellee. **ON BRIEF:** Kevin M. Schad, FEDERAL PUBLIC DEFENDER'S OFFICE, Cincinnati, Ohio, for Appellant. Christopher K. Barnes, ASSISTANT UNITED STATES ATTORNEY, Cincinnati, Ohio, for Appellee.

————————————

## OPINION

————————————

　　PAUL D. BORMAN, District Judge. Roger Dale Trent was indicted on December 11, 2007 in the United States District Court, Southern District of Ohio. The

————————————

[*]The Honorable Paul D. Borman, United States District Judge for the Eastern District of Michigan, sitting by designation.

one-count indictment charged that between on or about November 2, 2007, and November 25, 2007, Trent, an individual required to register under the Sex Offender Registration and Notification Act (SORNA), 42 U.S.C. § 16901 *et seq.*, traveled in interstate commerce to the Southern District of Ohio and knowingly failed to register and update a registration as required by SORNA, in violation of 18 U.S.C. § 2250(a), which creates criminal penalties for failing to register under SORNA.

On May 8, 2008, Trent filed a motion to dismiss the indictment, arguing: (1) that Congress exceeded its powers under the Commerce Clause in enacting SORNA; (2) that he had no duty to register under SORNA because he was deprived of due process by the government's failure to notify him of SORNA's requirements; (3) that delegating to the Attorney General the power to make SORNA retroactive violated the non-delegation doctrine; and (4) that SORNA did not apply to him because Ohio had not yet substantially implemented SORNA.

The district court denied the motion to dismiss the indictment, finding that SORNA was a valid exercise of congressional power under the Commerce Clause and that in delegating to the Attorney General the authority to determine the statute's retroactive effect, Congress did not violate the non-delegation doctrine. The district court further ruled that the government's failure to notify Trent of his obligation to register under SORNA did not violate due process and that Trent was obligated to register under SORNA notwithstanding the fact that Ohio had not fully implemented SORNA on the date of Trent's failure to register. On August 1, 2008, pursuant to Federal Rule of Criminal Procedure 11(a)(2), Trent entered a conditional plea of guilty to the offense of failing to register under SORNA, reserving his right to seek appellate review of the district court's denial of his motion to dismiss. Trent was sentenced on October 30, 2008, to 36 months imprisonment, a $100 victims crime fund special assessment, and lifetime supervised release. Judgment was entered on October 31, 2008.

Trent now files his appeal in this Court, reasserting each of the constitutional and statutory challenges rejected by the district court, arguing that the district judge erred in each of his rulings on Trent's motion to dismiss the indictment, and further asserting that

his prosecution under SORNA violates the Tenth Amendment, an argument that Trent did not present in the district court. For the reasons that follow, we **REVERSE** the decision of the district court and **DISMISS** the indictment because Trent was not required to register under SORNA at the time of his indicted failure to register.[1]

## I.    FACTUAL AND PROCEDURAL BACKGROUND

On or about August 30, 1994, Trent pleaded guilty to Second Degree Rape in Campbell County Kentucky Circuit Court for engaging in sexual intercourse with a 13 year-old female juvenile and was sentenced to five (5) years confinement. Trent served three years of his sentence and was released from jail on November 25, 1997. Under Kentucky law, Trent was required to register as a sex offender, and on November 10, 1997, Trent signed a Kentucky Sex Offender Registration Form which notified him of his duty to register as a sex offender until June 8, 2009, and to notify Kentucky authorities if his place of residence changed.

On or about May 20, 2002, Trent was accused of molesting his 12 year-old stepdaughter and was arrested for sexual battery by the Randolph County, Indiana Sheriff's Office. Eventually, on May 7, 2007, Trent was convicted of Sexual Battery in Randolph County Indiana Circuit Court, based upon the allegations of sexual abuse made against him by his stepdaughter. Trent was sentenced to three (3) years confinement with credit for time served and two (2) years probation. Following his May 7, 2007 conviction, Trent was required to register as a sex offender, and on May 11, 2007 he signed an Indiana Sex Offender Registration Form which notified him of his duty to register as a sex offender until May 7, 2017, and notify the Indiana County Sheriff's Office within seven (7) days of any change in his place of residence,

---

[1]Accordingly, we do not reach Trent's constitutional challenges to SORNA. The Court notes, however, that subsequent to oral argument in this matter, the Government filed a letter pursuant to Rule 28(j) of the Federal Rules of Appellate Procedure withdrawing its standing argument, asserted in its brief in response to Trent's Tenth Amendment claim, based on the United States Supreme Court's recent opinion in *Bond v. United States*, __ S. Ct. __, 2011 WL 2369334 at *10 (June 16, 2011) (holding that an individual has standing to assert a Tenth Amendment claim that a federal statute interferes with state sovereignty, subject to a showing of all Article III requirements, i.e. that he or she has suffered a concrete, particular harm fairly traceable to the conduct complained of and redressable by a favorable decision). The Government retained its merits arguments made in response to Trent's Tenth Amendment claim.

employment or education.  At the time of his May 11, 2007 registration, Trent indicated a residence at 9392 Seibt Road, Bradford, Ohio, 45308.

On July 20, 2007, Trent was arrested in Indiana for probation violations for failing to register as a sex offender and failing to keep his Indiana probation officer informed of his home address. Trent spent 108 days in jail for violating his probation.

On November 25, 2007, the Darke County Ohio Sheriff's Department determined that Trent was residing in Greenville, Ohio.  The Darke County Sheriff's Department had been alerted to Trent's movements by Trent's stepdaughter who lived in Greenville, Ohio, and notified Greenville police that Trent was stalking and threatening her.

At no time did Trent notify Ohio authorities of his address in Greenville, Ohio, as required by Ohio's sex offender registration law, nor did Trent notify Indiana authorities of his change of address, as required by his May 11, 2007 Sex Offender Registration Form.

Trent was arrested by federal authorities in Greenville, Ohio, on December 6, 2007, and charged with knowingly failing to register and update his registration from on or about November 2, 2007, to November 25, 2007, as required by both Indiana and Ohio law and as required by SORNA.  The December 12, 2007, one-count indictment filed against Trent charges that: "Between on or about November 2, 2007 and November 25, 2007, the defendant, ROGER DALE TRENT, an individual required to register under the Sex Offender Registration and Notification Act, traveled in interstate commerce to the Southern District of Ohio and did knowingly fail to register and update a registration as required by the Sex Offender Registration and Notification Act. In violation of Title 18, United States Code, Section 2250(a)."

On August 1, 2008, pursuant to Federal Rule of Criminal Procedure 11(a)(2), Trent entered a conditional plea of guilty based upon the admitted facts discussed above and reserved the right to seek appellate review of the district court's denial of his motion to dismiss the indictment.  Judgment was entered on October 31, 2008, and Trent was

sentenced to 36 months of imprisonment with lifetime supervised release with numerous conditions of supervision.  This timely appeal followed.

Trent's appeal was held in abeyance pending this Court's decision in *United States v. Utesch*, 596 F.3d 302 (6th Cir. 2010).  In *Utesch*, discussed at greater length *infra*, this Court held that SORNA's registration requirements did not apply to Utesch, who was convicted of a sex offense before SORNA was enacted on July 27, 2006, because his failure to register occurred before the Attorney General's guidelines on retroactive application of SORNA became effective on August 1, 2008.

This Court in *Utesch* did not have occasion to address the issue presented in this case -- whether a sex offender, who was convicted of a sexual offense after enactment of SORNA on July 27, 2006, but before SORNA was implemented in a particular jurisdiction (here Ohio), was required to register under the Act at any time before the Attorney General promulgated valid rules specifying the application of SORNA to such pre-implementation convictions.  The issue is one of first impression in this circuit, and the Court is not aware of any decisions in our sister circuits that have addressed this exact issue.[2]

Based on this Court's reasoning and holdings in *United States v. Cain*, 583 F.3d 408 (6th Cir. 2010) and *Utesch*, *supra*, sex offenders like Trent, who were convicted of failing to register before a particular jurisdiction had implemented SORNA, like sex offenders who failed to register before SORNA was enacted, were not required to register under SORNA until the Attorney General promulgated valid rules specifying when or whether the Act would apply to them.

---

[2]The question presented by Trent's conviction is distinct from the issue, discussed *infra* at p. 29, of whether a sex offender who *is* required to register under the Act can avoid that obligation because a particular jurisdiction has not fully implemented SORNA.  This latter question has been uniformly answered in the negative against defendants, by every circuit to have analyzed the issue.

## II.     ANALYSIS

### A.     Standard of Review

In reviewing a motion to dismiss an indictment, we review the district court's legal conclusions *de novo* and its finding of facts for clear error or an abuse of discretion. *Utesch*, 596 F.3d at 306. In this case, there are no operative facts in dispute. Trent disputes the applicability of SORNA to his failure to register and challenges the constitutionality of the Act on multiple grounds. Accordingly, our review is *de novo*.

### B.     Retroactive Application of SORNA to Pre-Enactment Sex Offenders

On July 27, 2006, in an effort to bring a measure of cohesiveness to the existing "patchwork" of state and federal sex-offender registration systems, Congress enacted the Sex Offender Registration and Notification Act ("SORNA" or "the Act"), codified at 42 U.S.C. § 16901 *et seq.*, as Title I of the Adam Walsh Child Protection and Safety Act, Pub. L. 109-248, Tit. I, 120 Stat. 590. Title 42 U.S.C. § 16913 creates the sex offender registration requirements, and 18 U.S.C. § 2250(g) imposes criminal penalties for failing to register under the Act. The registration requirements and criminal penalties imposed for failing to register under the Act are just one aspect of the comprehensive effort embodied in the Act to create, over time, a set of national minimum standards for the registration of sex offenders in all jurisdictions.

> Section 16913 sets forth the registry requirements for sex offenders:
>
> (a) In general
>
> A sex offender shall register, and keep the registration current, in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student. For initial registration purposes only, a sex offender shall also register in the jurisdiction in which convicted if such jurisdiction is different from the jurisdiction of residence.
>
> (b) Initial registration
>
> The sex offender shall initially register--
>
> (1) before completing a sentence of imprisonment with respect to the offense giving rise to the registration requirement; or

(2) not later than 3 business days after being sentenced for that offense, if the sex offender is not sentenced to a term of imprisonment.

(c) Keeping the registration current

A sex offender shall, not later than 3 business days after each change of name, residence, employment, or student status, appear in person in at least 1 jurisdiction involved pursuant to subsection (a) of this section and inform that jurisdiction of all changes in the information required for that offender in the sex offender registry. That jurisdiction shall immediately provide that information to all other jurisdictions in which the offender is required to register.

(d) Initial registration of sex offenders unable to comply with subsection (b) of this section

The Attorney General shall have the authority to specify the applicability of the requirements of this subchapter to sex offenders convicted before the enactment of this chapter or its implementation in a particular jurisdiction, and to prescribe rules for the registration of any such sex offenders and for other categories of sex offenders who are unable to comply with subsection (b) of this section.

(e) State penalty for failure to comply

Each jurisdiction, other than a Federally recognized Indian tribe, shall provide a criminal penalty that includes a maximum term of imprisonment that is greater than 1 year for the failure of a sex offender to comply with the requirements of this subchapter.

42 U.S.C. § 16913.

Title 18 U.S.C. § 2250 criminalizes the failure to register or update registration for any person who (1) "is required to register under [SORNA]," (2) "travels in interstate or foreign commerce," and (3) "knowingly fails to register or update a registration as required by [SORNA]." 18 U.S.C. § 2250. The Supreme Court recently held that these three elements are to be satisfied sequentially: "It is far more sensible to conclude that Congress meant the first precondition to § 2250 liability to be the one it listed first: a 'require[ment] to register under [SORNA].'" *Carr v. United States,* 130 S. Ct. 2229, 2235-36 (2010). Concluding that interstate travel that occurred prior to enactment of SORNA on July 27, 2006, cannot form the basis for liability under the Act, the Court explained: "Once a person becomes subject to SORNA's registration requirements,

which can occur only after the statute's effective date, that person can be convicted under § 2250 if he thereafter travels and then fails to register." *Id*. at 2236.

The issue presented in this case is whether SORNA applied to Trent on the date of his indicted failure to register such that he was "required to register" under SORNA, the first element which must be established for imposition of criminal liability under the Act. Trent argues that he was not required to register under SORNA because at the time of his indicted failure to register, Ohio had not yet implemented SORNA and the Attorney General had not yet ruled on the retroactive application of SORNA to sex offenders who failed to register in a jurisdiction that had not yet implemented SORNA. The District Court held that the Attorney General's February 28, 2007, interim rule, which specified that SORNA applied to all sex offenders, including those like Trent who were convicted in jurisdictions that had not fully implemented SORNA, was applicable to Trent on the date of his indicted failure to register in November, 2007. Since the District Court issued its opinion in this case, much has transpired on the SORNA legal landscape and resolution of the issue presented in this case is now dictated by this Court's post-2008 decisions in *Cain* and *Utesch*, *supra*.

In *Cain*, this Court held that SORNA did not apply retroactively of its own force and that SORNA unambiguously delegated to the Attorney General the sole authority to determine the retroactive application of the statute to "pre-enactment" sex offenders, i.e., sex offenders convicted before enactment of SORNA on July 27, 2006. 583 F.3d at 420. This Court relied on the plain language of § 16913(d) which provides in pertinent part: "The Attorney General shall have the authority to specify the applicability of the requirements of this subchapter to sex offenders convicted before July 27, 2006 or its implementation in a particular jurisdiction . . . ." 42 U.S.C. § 16913(d). The Court then concluded that the Attorney General had not validly, in conformance with the Administrative Procedure Act (APA), established such regulations on the date of Cain's alleged failure to register between October 16, 2006 and March 28, 2007. 583 F.3d at 419-20. This Court reasoned that the Attorney General failed to provide a "good cause" justification for dispensing with notice and comment and directing immediate

effectiveness of a February 28, 2007, Interim Rule specifying application of the Act to pre-enactment sex offenders. *Id*. at 423. This Court further ruled that the Interim Rule could take effect, if at all, no sooner than thirty days after its publication on February 28, 2007, which preceded the date of Cain's indicted failure to register during a period ending on March 28, 2007. *Id*. at 423. This Court concluded that "[b]ecause the Attorney General did not issue [a regulation specifying application of SORNA to a sex offender convicted before its enactment] in compliance with the notice and comment and publication requirements of the APA within the time period charged in Cain's indictment, the indictment must be dismissed." *Id*. at 424.

In *Utesch*, this Court had occasion once again to address the retroactive application of SORNA to a pre-enactment sex offender. This Court first recognized that the government's argument that SORNA applied of its own force to pre-enactment sex offenders was rejected and foreclosed by the holding in *Cain*, *supra*, that SORNA "vested the retroactivity decision with the Attorney General." 596 F.3d at 308. Turning to the issue presented by Utesch's alleged failure to register as sex offender from September 1, 2006, to November 12, 2007, this Court concluded that the Attorney General's regulations applying SORNA to defendants who were convicted before SORNA was enacted on July 27, 2006, were not effective until the Attorney General issued final guidelines in full compliance with the APA rule making procedures on August 1, 2008. 596 F.3d at 311.

As this Court explained in *Utesch*, there were three possible candidates for validly promulgated regulations: (1) the February 28, 2007, "immediately effective" Interim Rule issued by the Attorney General, 72 Fed. Reg. 8894 (the "Interim Rule"); (2) the May 30, 2007, SMART Guidelines (an acronym derived from the "Office of Sex Offender Sentencing, Monitoring, Apprehending, Registering and Tracking," which was created by SORNA and authorized to administer the standards for sex offender registration and notification that are set forth in SORNA and interpreted and implemented in the SMART Guidelines), 72 Fed. Reg. 30,210 (the "Preliminary SMART Guidelines"); and (3) the July 2, 2008, Final SMART guidelines, which became

effective on August 1, 2008, after notice and comment, 73 Fed. Reg. 38,030 (the "Final SMART Guidelines").[3]  596 F.3d at 308.

In settling on the August 1, 2008, effective date, this Court in *Utesch* rejected arguments for the adoption of two earlier possible dates based upon the Interim Rule or the Preliminary SMART Guidelines.  This Court found that the Attorney General failed to provide "good cause" to justify dispensing with notice and comment on the February 27, 2008, Interim Rule which therefore was never finalized pursuant to APA procedures and further concluded that the May 30, 2007 Preliminary SMART Guidelines were just that – proposed and preliminary – and did not carry the force of law.  596 F.3d at 310-11. Because only the July 2, 2008, Final SMART Guidelines, published for notice and comment and effective thirty days later on August 1, 2008, fully complied with the APA, this Court concluded unequivocally that: "SORNA became effective against offenders convicted before its enactment thirty days after the final SMART guidelines were published: that is, on August 1, 2008." *Id*. at 311.[4]

---

[3]Since our opinion in *Utesch*, the Attorney General has issued a Final Rule, finalizing the February 28, 2007 Interim Rule, 75 Fed. Reg. 81,849 ("the Final Rule"). The Final Rule, issued December 29, 2010, and effective January 28, 2011, reiterates the Attorney General's position asserted in the Interim Rule and through the Final SMART Guidelines, that SORNA applies to all sex offenders, regardless of when they were convicted.  The Attorney General specifically addressed this Court's holding in *Utesch* that the Final SMART Guidelines "are, independently of the interim rule, a valid final rule providing that SORNA applies to all sex offenders, including those whose convictions predate SORNA." 75 Fed. Reg. at 81850.  The Attorney General found "no disagreement with that conclusion" but also stated that its final rulemaking "does not reflect agreement with the earlier conclusions of the Sixth Circuit holding [in *Cain*] that the interim rule was invalid at the time of its publication and that SORNA does not apply retroactively of its own force." 75 Fed. Reg. at 81850.  The Final Rule, however, takes no definitive position on whether SORNA's requirements applied to pre-enactment sex offenders of their own force or were dependent for their retroactive application on rulemaking by the Attorney General. 75 Fed. Reg. at 81850-81851.  *Cain* remains the applicable legal precedent in this Circuit.

[4]As the Supreme Court recently recognized in *Carr*, the circuits remain divided on the issues of (1) whether SORNA applied retroactively of its own force and, if it did not, (2) when the Attorney General issued valid regulations regarding retroactive application to pre-enactment sex offenders. *Carr* recognized the circuit splits on these issues but expressed no view on the proper resolution of either issue.  130 S. Ct. at 2234 n. 2.

The First, Second, Third, Eighth and Tenth Circuits have concluded that SORNA applied to pre-enactment convicted sex offenders with pre-existing obligations to register on the date it was enacted and that application to such pre-enactment convicted sex offenders was not dependent on further action by the Attorney General. *See United States v. DiTomasso*, 621 F.3d 17, 23 (1st Cir. 2010); *United States v. Fuller*, 627 F.3d 499, 507 (2d Cir. 2010); *United States v. Shenandoah*, 595 F.3d 151, 157-58 (3d Cir. 2010); *United States v. May*, 535 F.3d 912, 918-919 (8th Cir. 2008); and *United States v. Hinckley*, 550 F.3d 926, 929-935 (10th Cir. 2008).

The Ninth Circuit has agreed with this Court that action by the Attorney General was required under the Act before pre-enactment convicted sex offenders could be required to register under the Act and that SORNA was not effective against pre-enactment convicted sex offenders until August 1, 2008 when the SMART guidelines became final. *United States v. Valverde*, 628 F.3d 1159, 1160 (9th Cir. 2010). *See*

**C.     SORNA Did Not Apply to Trent on the Date of His Indicted Failure to Register (November 2-25, 2007) Because, as a Pre-Implementation Sex Offender, He Was Not Required to Register Under the Act Until August 1, 2008**

The rulings of this Court in *Cain* and *Utesch*, while specifically addressing the retroactive application of SORNA only to pre-enactment sex offenders, also dictate the result in this case as to a pre-implementation sex offender, i.e., one whose conviction for a sexual offense occurred after SORNA's July 27, 2006, enactment but before SORNA was implemented in a particular jurisdiction – here Ohio.[5] The resolution of this issue derives, as it did in *Cain*, from the plain language of the Act, language which this Court has already interpreted as to the class of pre-enactment sex offenders. Trent, although convicted of a sex offense after enactment of SORNA, falls into a second category of sex offenders also carved out by Congress to be subject to the Act's provisions only after specification by the Attorney General as to retroactive application. The relevant statutory language provides that:

> The Attorney General shall have the authority to specify the applicability of the requirements of this subchapter to sex offenders convicted before July 27, 2006 [the date of enactment] or its implementation in a particular jurisdiction, and to prescribe rules for the registration of any such sex offenders and for other categories of sex offenders who are unable to comply with subsection (b).

---

*also United States v. Cotton*, 760 F. Supp. 2d 116, 132 (D.D.C. 2011) ("This court agrees with the reasoning of the Sixth and Ninth Circuits, under which the interim rule is invalid and SORNA did not become effective until August 1, 2008, thirty days after the final SMART guidelines were issued.").

The Fourth and Eleventh Circuits, while agreeing that the Attorney General was uniquely authorized to specify retroactive application of the Act, have concluded that the Attorney General had "good cause" to forego notice and comment and to make the February 28, 2007 Interim Rule immediately effective, and have adopted that date as the effective date for sex offenders convicted before SORNA was enacted. *United States v. Gould*, 568 F.3d 459, 469-70 (4th Cir. 2000); *United States v. Dean*, 604 F.3d 1275, 1278-83 (11th Cir. 2010).

In *United States v. Dixon*, 551 F.3d 578, 582 (7th Cir. 2008), *rev'd on other grounds sub nom. Carr v. United States*, __ U.S. __, 130 S. Ct. 2229 (2010), the Seventh Circuit did not explicitly address the good cause issue, but recognized that the Act required the Attorney General to specify retroactivity of the Act, which, the court found, "the Attorney General did in his regulation of February 28, 2007." In *United States v. Johnson*, 632 F.3d 912, 922 (5th Cir. 2011), the Fifth Circuit agreed that the Act required rulemaking by the Attorney General, concluded that the Attorney General did not have good cause to forego notice and comment and implied that the effective date of the Act, had notice and comment been provided for, would have been March 30, 2007. The Fifth Circuit ultimately concluded, however, that the error was harmless in Johnson's case. 632 F.3d at 928-33.

[5]There is no dispute that neither Ohio, nor Indiana, had implemented SORNA at the time of Trent's indicted failure to register. *See* http://www.ojp.gov/smart/sorna.htm.

42 U.S.C. § 16913(d). The first clause of this subsection provides that the Attorney General shall have the authority to specify the applicability of the Act to sex offenders convicted (1) before its July 27, 2006, enactment *or* (2) before its implementation in a particular jurisdiction. This Court recognized these two distinct categories of sex offenders in *Cain*, noting that: "Congress employed language specifying that SORNA could apply to all sex offenders, but that the Attorney General would specify when offenders with past convictions and offenders convicted before the states fully implemented SORNA would be required to register." 583 F.3d at 417. Grammatical structure cannot be ignored in the endeavor of statutory construction. *See Bloate v. United States*, __U.S.__, 130 S. Ct. 1345, 1354 (2010) (noting that to ignore structure and grammar "would violate settled principles of statutory construction"). Use of the coordinating conjunction "or" in the first clause of section 16913(d) indicates the joining within this independent clause of two distinct groups of individuals, sex offenders convicted before SORNA was enacted and sex offenders convicted before SORNA was implemented in a particular jurisdiction. Because implementation by the states could only occur after SORNA was enacted, this language contemplates a post-enactment sex offender like Trent. Both categories of sex offenders are subject to the same authority of the Attorney General to specify the applicability of the Act to them. *See Cain*, 583 F.3d at 415 (quoting § 16913(d)) ("The identity of the offenders to whom SORNA did not apply without specification [by the Attorney General] is clear: 'sex offenders convicted before the enactment of this Act or its implementation in a particular jurisdiction.'"

The Attorney General's Preliminary and Final SMART Guidelines demonstrate that the authority granted to the Attorney General in § 16913(d) to determine retroactive application of the Act encompassed both pre-enactment and pre-implementation sex offenders. Both the Preliminary and Final SMART Guidelines distinctly specify the applicability of SORNA to these two groups under the uniform heading of "Retroactivity:"

> C. Retroactivity
>
> The applicability of the SORNA requirements is not limited to sex offenders whose predicate sex offense convictions occur following a jurisdiction's implementation of a conforming registration program. Rather, SORNA's requirements apply to all sex offenders, including those whose convictions predate the enactment of the Act. The Attorney General has so provided in 28 CFR part 72, pursuant to the authority under SORNA section 113(d) to "specify the applicability of the requirements of [SORNA] to sex offenders convicted before the enactment of this Act or its implementation in a particular jurisdiction."
>
> *            *            *
>
> Retroactive Classes
>
> SORNA applies to all sex offenders, including those convicted of their registration offenses prior to the enactment of SORNA or prior to particular jurisdictions' incorporation of the SORNA requirements into their programs.

72 Fed. Reg. 30, 212, 30,228 (Preliminary SMART Guidelines).

Similar language appears throughout the Final SMART Guidelines, where pre-enactment and pre-implementation sex offenders are referred to in tandem:

> Retroactivity: Some commenters objected to, or expressed concerns about, provisions of the guidelines that require that jurisdictions apply the SORNA requirements "retroactively" to certain categories of offenders whose sex offense convictions predate the enactment of SORNA or its implementation in a particular jurisdiction. . . . Parallel explanation has also been provided in relation to *pre-SORNA (or pre-SORNA-implementation)* convictions that raise a sex offender's tier classification under SORNA on grounds of recidivism.
>
> *            *            *

> Where the critical comments about the guidelines' treatment of retroactivity went beyond considerations that fail to distinguish sex offenders with *pre-SORNA (or pre-SORNA-implementation)* convictions from those with more recent convictions, they tended to argue that retroactive application of SORNA's requirements would be unconstitutional, or would be unfair to sex offenders who could not have anticipated the resulting applicability of SORNA's requirements at the time of their entry of a guilty plea to the predicate sex offense.

\*                    \*                    \*

> C. Retroactivity
>
> The applicability of the SORNA requirements is not limited to sex offenders whose predicate sex offense convictions occur following a jurisdiction's implementation of a conforming registration program. Rather, SORNA's requirements took effect when SORNA was enacted on July 27, 2006, and they have applied since that time to all sex offenders, including those whose convictions predate SORNA's enactment.

73 Fed. Reg. 38,030, 38,036, 38,046 (emphasis added).

Had the Attorney General's authority to determine retroactive application of SORNA been limited only to pre-enactment sex offenders, there would have been no need for discussion of the pre-implementation group in the Guidelines. As this Court recognized in *Cain*, the plain language of the Act provides that "the Attorney General would specify when offenders with past convictions and offenders convicted before the states fully implemented SORNA would be required to register." 583 F.3d at 417. "Because the Attorney General has authority to "specify" the applicability of SORNA's requirements to certain sex offenders, SORNA did not apply to those offenders until the Attorney General exercised that authority. . . ." *Id*. at 414. In *Cain*, this Court rejected several arguments that the statutory language was ambiguous, concluding:

> Congress did not enact language providing a default position that the statute applied unless the Attorney General excused compliance; the statute does not read "the Attorney General shall have the authority to waive the applicability of the requirements of this subchapter." Rather, pursuant to § 16913(d), SORNA did not apply to certain offenders until the Attorney General specified that it did.

583 F.3d at 415.

Trent was convicted of a sex offense on May 5, 2007, after SORNA's enactment, but his interstate travel and failure to register under SORNA occurred before Ohio had implemented SORNA. Thus, while Trent cannot escape application of the Act's registration requirements as a pre-enactment sex offender, the Act's registration requirements did not apply to him unless and until the Attorney General promulgated rules specifying that SORNA applied to this second category of sex offenders, pre-implementation sex offenders, whose convictions predate a particular jurisdiction's implementation of SORNA. This Court held in *Utesch* that August 1, 2008, is the effective date of the Attorney General's regulations specifying the retroactive application of SORNA. 596 F.3d at 307. Trent's indicted failure to register between November 2, 2007, and November 25, 2007, occurred before SORNA's registration requirement applied to him.

This Court's holdings and reasoning in *Cain* and *Utesch* compel the conclusion that Trent was not required to register at any time before the Attorney General's regulations became effective on August 1, 2008. Trent was convicted of failing to register in Ohio in and around November, 2007. While this failure to register was a violation of both Ohio and Indiana law, it was not also a separate and independent violation of SORNA, in a jurisdiction that had not yet implemented the Act, because it occurred before the Attorney General validly specified the retroactive application of SORNA to pre-implementation sex offenders.

Admittedly, this interpretation gives the Attorney General the authority to prescribe the applicability of the Act to a great majority of sex offenders, because few, if any, states would immediately implement SORNA coincidental with its enactment. Some courts have argued, with respect to the pre-enactment population of sex offenders, that such an interpretation could result in an Act that might never achieve the stated legislative goal of a "comprehensive registration regime" because the Attorney General could decide "in his or her unfettered discretion" not to require any pre-enactment sex offenders to register. *See United States v. Hinckley*, 550 F.3d 926, 944 n. 3 (10th Cir.

2008) (Gorsuch, J. concurring). However, as this Court observed in *Cain*, the parade of horribles expressed in Judge Gorsuch's concurring opinion ignores the political reality that the Attorney General would not make such a choice: "Moreover, the related argument that SORNA is not comprehensive because an Attorney General might not require any pre-SORNA offenders to register disregards the political reality that an Attorney General was unlikely to do so." *Cain*, 583 F.3d at 417 (noting Judge Gorsuch's concurring opinion in *Hinckley*.) And, in fact, the Attorney General has exercised his authority and specified retroactive applicability to both pre-enactment and pre-implementation sex offenders, just as the statute presumed he would. All sex offenders whose interstate travel and failure to register occurred after August 1, 2008, are required to register under the Act.[6]

It is not anomalous or inexplicable to think that Congress would have delegated such broad authority to the Attorney General regarding retroactivity, given the Attorney General's expertise in such legal matters. As the history of SORNA in the courts proves, the Act has faced numerous constitutional and statutory challenges, and the decision to provide the Attorney General with preliminary authority to analyze the often controversial issue of retroactivity was sound. As the Fifth Circuit noted in *United States v. Johnson*, 632 F.3d 912 (5th Cir. 2011):

> Congress could have struck for a comprehensive and uniform registration system while relying on the Attorney General to define its specifics. SORNA did not require that the national registry be immediately created. The Act gave states years to comply with its requirements, and only three states to-date have complied. Giving the Attorney General authority to determine the statute's application to pre-enactment offenders would allow an agency that is an expert in criminal law to negotiate the details of retroactivity and the interactions between the pre-existing state systems.

---

[6]After the Supreme Court's holding in *Carr* that SORNA does not apply to sex offenders whose interstate travel occurred prior to SORNA's effective date, it follows that pre-enactment and pre-implementation sex offenders must both travel interstate and fail to register after August 1, 2008, the Act's effective date as to them. *See United States v. Dietrich*, 409 F. App'x 993, 994 (9th Cir. 2011) (recognizing the Ninth Circuit's agreement with this Court's holding in *Utesch* that August 1, 2008 is the effective date of SORNA as to pre-enactment sex offenders and reversing a conviction where the sex offender's interstate travel occurred in April, 2008).

*Id*. at 926.  This same observation applies with equal force to the category of pre-implementation sex offenders, whose registration under the Act necessarily implicates "interactions between pre-existing state systems."  *See id*.  As contemplated by the Act, the Attorney General has spoken and addressed many of the statutory and constitutional issues that have been litigated since SORNA was enacted.

It is also important to remember that Trent was subject to numerous pre-existing sex offender registration laws, both state and federal, which carried their own criminal penalties.  Thus, in delegating to the Attorney General the time and authority to specify retroactive application of SORNA's new and more severe criminal penalties, Congress did not give pre-enactment and pre-implementation sex offenders a free pass.  Certain aspects of the enforcement of sex offender registration laws have traditionally been left to the states, as this Court recognized in *Cain* and as the Supreme Court recognized in *Carr*, and delaying the effectiveness of the Act as to certain sex offenders did not affect those existing laws and penalties.  In declining to adopt language expressly subjecting any unregistered sex offender who ever traveled in interstate commerce to liability under the Act, the Court in *Carr* explained that the choice to treat federal and state offenders differently was an historically-based and reasonable one:

> There is nothing "anomal[ous]" about such a choice. To the contrary, it is entirely reasonable for Congress to have assigned the Federal Government a special role in ensuring compliance with SORNA's registration requirements by federal sex offenders-persons who typically would have spent time under federal criminal supervision. It is similarly reasonable for Congress to have given the States primary responsibility for supervising and ensuring compliance among state sex offenders and to have subjected such offenders to federal criminal liability only when, after SORNA's enactment, they use the channels of interstate commerce in evading a State's reach.
>
> In this regard, it is notable that the federal sex-offender registration laws have, from their inception, expressly relied on state-level enforcement. Indeed, when it initially set national standards for state sex-offender registration programs in 1994, Congress did not include any federal criminal liability. Congress instead conditioned certain federal funds on States' adoption of "criminal penalties" on any person "required to register under a State program ... who knowingly fails to so register and keep such registration current." Jacob Wetterling Crimes Against

Children and Sexually Violent Offender Registration Act, Pub.L.
103-322, Tit. XVII, § 170101(c), 108 Stat. 2041, 42 U.S.C. § 14071(d).
Two years later, Congress supplemented state enforcement mechanisms
by subjecting to federal prosecution any covered sex offender who
"changes address to a State other than the State in which the person
resided at the time of the immediately preceding registration" and
"knowingly fails to" register as required. Pam Lychner Sexual Offender
Tracking and Identification Act of 1996, Pub.L. 104-236, § 2, 110 Stat.
3095, 3096, 42 U.S.C. §§ 14072(g)(3), (I). The prospective orientation
of this provision is apparent. No statutory gap necessitated coverage of
unregistered offenders who "change[d] address" before the statute's
enactment; the prosecution of such persons remained the province of the
States.

130 S. Ct. at 2238-39. Similarly in this case, the Court will not question the legislative
choice to leave the question of SORNA's applicability to pre-enactment and pre-
implementation sex offenders to the Attorney General's rule making authority, despite
the fact that such a choice delayed the immediate effectiveness of the Act with respect
to a certain number of sex offenders. "Given the patchwork of state approaches toward
sex offender registration that existed prior to the enactment of SORNA, it was not
'absurd' for Congress to delegate this authority to the Attorney General, with the intent
that he exercise it to effectuate a comprehensive registration system." *United States v.
Hatcher*, 560 F.3d 222, 229 (4th Cir. 2009).

**D.    As a Pre-Implementation Sex Offender in Ohio, Trent's Obligation
to Register Under the Act Was Dependent on the Attorney General's
Rule Making, Not on Ohio's Substantial Implementation of SORNA**

Trent did not discuss *Cain* or *Utesch* in his brief on appeal, although his case was
held in abeyance pending this Court's ruling in *Utesch*. At oral argument, however,
Trent altered course and argued that *Cain* and *Utesch* are controlling, and that a pre-
implementation sex offender should be categorized in the same way that a pre-enactment
sex offender has been categorized under the Act, i.e., as subject to SORNA's registration
requirements only after final rule making by the Attorney General. In his brief on
appeal, however, Trent urged the Court to conclude, without reference to *Cain* or *Utesch*,
that despite the fact that Trent was convicted of a sexual offense after the enactment of
SORNA, the Act cannot be applied to him because Ohio had not implemented SORNA

at the time of Trent's conviction for failure to register and because on the date of his indicted failure to register, the Attorney General had not yet issued a regulation declaring that SORNA applies to those convicted before the Act is implemented in a particular jurisdiction. Trent relied in his brief on the Attorney General's May 30, 2007, Preliminary SMART Guidelines and quoted the following language from those guidelines that he contends supports the proposition that pre-SORNA implementation convicted sex offenders have a duty to register only after the jurisdiction implements SORNA:

> With respect to sex offenders with pre-SORNA or pre-SORNA-implementation convictions who remain in the prisoner, supervision, or registered sex offender populations at the time of implementation . . . jurisdictions should endeavor to register them in conformity with SORNA as quickly as possible.

Trent's argument reaches the right result in his case, but for the wrong reason. First, this Court held in *Utesch* that the Attorney General's Preliminary SMART Guidelines did not have the force of law and were not effective at the time Trent failed to register. Second, the quoted portion addresses the state's obligations to register sex offenders, not the sex offender's obligation to register with the state, a duty which is separate and independent, as discussed *infra*, from the state's duty to implement SORNA and to register sex offenders under the Act. Finally, and significantly, those same Guidelines, in an earlier section which Trent fails to discuss, specifically address Trent's situation: "SORNA applies to all sex offenders, including those convicted of their registration offenses prior to the enactment of SORNA or prior to particular jurisdictions' incorporation of the SORNA requirements into their programs." 72 Fed. Reg. at 30228. Thus, Trent's reliance on the Preliminary SMART Guidelines is misplaced, both because this Court has rejected those guidelines as final and, even if they were applicable, they clearly specify that SORNA applies to sex offenders who were convicted before a particular jurisdiction has implemented SORNA.

As discussed above, and as Trent submitted at oral argument on this matter, Trent's failure to register on or about November 2, 2007, to November 25, 2007, escapes

prosecution under SORNA because his conduct preceded the August 1, 2008 effective date of the Attorney General's Final SMART Guidelines specifying retroactivity of the Act to sex offenders convicted before a particular jurisdiction had fully implemented SORNA, not because the Attorney General had spoken but failed to address the application of SORNA to pre-implementation convictions.

Responding to the argument made in Trent's brief on appeal, the Government cites numerous well-reasoned opinions from our sister circuits holding that the failure of a state to implement SORNA does not affect the independent obligation of a sex offender to register under the Act. Many of those cases rely for support on the Attorney General's guidelines, which expressly state that a sex offender's obligation to register under the Act is not dependent on a state's implementation of SORNA. However, the Government's argument misses the mark as applied to Trent because it fails to address the fact that a sex offender must be required to register under the Act in the first instance before any argument regarding the state's failure to implement SORNA becomes relevant to that obligation to register. In the cases relied on by the Government, the sex offender was required, under the relevant law in the jurisdiction where he failed to register, to register under SORNA. Under the law in this Circuit, as discussed above, Trent was not required to register under SORNA at the time of his indicted failure to register and thus each of these cases is distinguishable.

For example, the Government discusses at length the Third Circuit's opinion in *United States v. Shenandoah*, 595 F.3d 151 (3d Cir. 2010). Shenandoah was indicted in December, 2007 for failing to register under SORNA based on a 1996 conviction for third degree rape. 595 F.3d at 153-54. Thus, Shenandoah was a pre-enactment sex offender who traveled and failed to register after SORNA was enacted. Shenandoah argued that because neither New York or Pennsylvania had implemented SORNA at the time of his failure to register, he was not required to register under the Act. The *Shenandoah* court drew a distinction between the obligation imposed by subsection (c) to keep a registration current, and the obligation imposed by subsection (d) regarding initial registration, holding that a pre-existing duty to register under state law requires

only "updating" registration under subsection (c) and that "updating" is not dependent on action by the Attorney General.

At oral argument, the Government continued to press this position, urging that Trent's obligation to register ran through subsections (a) and (c) of the Act, not through (d), because Trent was under a pre-existing duty to register under state law that brought him within a special sub-category of pre-implementation sex offenders whose obligation to register was not dependent on the Attorney General's rulemaking authority. The Government conceded that certain post-enactment, pre-implementation sex offenders were intended to be captured under the umbrella of the Attorney General's authority to specify retroactive application of the Act but argued that only a select group of such pre-implementation sex offenders were contemplated by the language of subsection (d), i.e., those who were not under a pre-existing duty to register under state law. Fatal to the Government's argument, however, is the fact that this Court rejected, in *Cain* and *Utesch*, the argument that a pre-existing duty to register under state law is sufficient to bring a pre-enactment sex offender within the requirements of SORNA absent action by the Attorney General. It was on this point that this Court parted company with the reasoning of some our sister circuits which had embraced the view that the Attorney General's authority to issue regulations pertained only to those sex offenders who were "unable to register" under pre-existing state law registration systems. *See, e.g. Hinckley*, 550 F.3d at 935 (holding that because Hinckley was required to register under state law at the time SORNA was enacted, he was not subject to SORNA's initial registration requirements in subsections (b) or (d), and SORNA was immediately applicable to him on its enactment without further specification by the Attorney General). *See also Utesch*, 596 F.3d at 307-08 (noting that this position, adopted by the Tenth Circuit in *Hinckley,* was rejected by this Court in *Cain*).

The Government has offered no persuasive authority to indicate that this Court should treat a pre-existing duty to register under state law differently in the context of a pre-implementation sex offender than it has in *Cain* and *Utesch* in the context of a pre-enactment sex offender. While the Government would like the Court to create such a

sub-category of pre-implementation sex offenders, the statute in subsection (d) makes no such distinction and the precedent in this Circuit which interprets the same clause of subsection (d) precludes such an interpretation. When asked at oral argument to direct the Court to legislative history which might support such a distinction, the Government conceded that the legislative history of SORNA is distinctly unhelpful on this issue. The Government instead directed the Court's attention to the Attorney General's Interim SMART Guidelines which, on close reading, support only the conclusion that the Attorney General interpreted his authority to determine retroactive application of the Act to reach pre-enactment and pre-implementation sex offenders alike, including those who were under pre-existing duties to register under state law.

The Government's proposed construction of the Act is untenable in this Circuit. If a pre-existing obligation to register under state law was sufficient to take a pre-enactment or pre-implementation sex offender outside the category of sex offenders as to whom the Attorney General was to specify applicability, both Cain and Utesch, as well as other offenders similarly situated with pre-existing obligations to register under state law, would have been carved out of that group. There is no indication that this result is contemplated by the Act; the Act does not say that the Attorney General shall have authority to specify applicability to pre-enactment and pre-implementation sex offenders who aren't under a pre-existing duty to register. Presumably the great majority of such sex offenders *were* under such a duty. This Court in *Cain* and *Utesch* did not deem it important that the sex offenders were under a pre-existing duty to register under state law, and there is no basis to give such a factor increased significance in the context of a pre-implementation sex offender like Trent.

Subsection (d) expressly states that the Attorney General's authority to determine retroactive application extends to "all the requirements of this subchapter." The "subchapter" is all of SORNA, not just certain subsections of the Act. SORNA is found in Title 42 of the United States Code. Chapter 151 of Title 42 concerns "Child Protection and Safety." Subchapter I of Title 42 is "Sex Offender Registration and Notification," i.e., SORNA. Thus, it is clear, as this Court recognized in *Cain*, that SORNA (all of it)

categorically "did not apply to certain offenders until the Attorney General specified that it did." 583 F.3d at 415. The Third Circuit's opinion in *Shenandoah* disagreed with this when it held that "[t]he plain language of SORNA requires an offender to update their state registration, independent of any construction of the statute by the Attorney General. Shenandoah's obligation to register was triggered by the enactment of the statute; it is not contingent upon a green light from the Attorney General." 595 F.3d at 157-58. This simply is not the law in this Circuit and *Shenandoah* is therefore inapt.[7]

The remaining cases on which the Government relies are similarly distinguished. For example, in *United States v. Guzman*, 591 F.3d 83, 94 (2d Cir. 2010), *cert. denied*, 130 S. Ct. 3487 (June 21, 2010), both of the defendants traveled across state lines and failed to register "after SORNA's enactment and [after] the effective date of the regulations indicating that SORNA applies to all sex offenders." Thus, unlike the instant case, the defendants in *Guzman* (pre-enactment sex offenders) failed to register at a time when, under the law in the Second Circuit, the Attorney General's regulations were in effect as against them.

Similarly, in *United States v. Gould*, 568 F.3d 459, 466 (4th Cir. 2009), *cert. denied*, 130 S. Ct. 1686 (Mar. 1, 2010), the Fourth Circuit had determined that the Attorney General's regulations were final following publication of the Interim Rule on February 28, 2007. Gould, a pre-enactment sex offender, failed to register in July, 2007, after the date that the regulations were effective against him under Fourth Circuit law. Like the court in *Guzman*, the court in *Gould* concluded that the sex offender's duty to register under SORNA was separate from and not dependent on the state's implementation of the Act.

Likewise, in *United States v. Heth*, 596 F.3d 255, 258 (5th Cir. 2010), *Hinckley*, 550 F.3d at 939, and *United States v. Foster*, 354 F. App'x 278, 281 (8th Cir. 2009) the

---

[7]The Supreme Court noted in its *per curiam* opinion in *United States v. Juvenile Male*, 564 U.S. __, No. 09-940 (June 27, 2011), that it has granted certiorari in a case slated to be heard next Term: *Reynolds v. United States*, 562 U.S. __ , No. 10-6549 (Jan. 24, 2011). A decision in *Reynolds* may, at least indirectly, resolve the split of authority typified by this Court's holdings in *Cain* and *Utesch* and the Third Circuit's opinion in *Shenandoah*. The grant of certiorari in *Reynolds* involves the issue of whether a pre-enactment sex offender has standing to challenge the validity of the Attorney General's Interim Rule.

pre-enactment sex offenders failed to register after the effective date of the Act in those jurisdictions (July 27, 2006 in *Hinckley* and *Foster* and April 30, 2007 in *Heth*). In *United States v. Dixon*, 551 F.3d 578, 582 (7th Cir. 2008), *rev'd on other grounds sub nom. United States v. Carr*, 130 S. Ct. 2229 (2010), the court adopted the February 28, 2007 Interim Rule as the effective date of SORNA against a pre-enactment sex offender where the relevant travel occurred, at least in part, after that date.

Finally, the Government relies on *United States v. George*, 579 F.3d 962 (9th Cir. 2009) which was superseded by an amended opinion issued on November 2, 2010, *United States v. George*, 625 F.3d 1124 (9th Cir. 2010), in which the Ninth Circuit added a footnote to its earlier opinion to explicitly explain that SORNA's "registration requirements became applicable to pre-SORNA sex offenders no later than the February 28, 2007 issuance of the Attorney General's interim order. 72 Fed. Reg. 8894." 625 F.3d at 1126 n.3. Because George's failure to register occurred several months after the interim order was issued, "SORNA applied to George at the time of his arrest in Washington in September 2007." *Id.* Therefore, the Ninth Circuit concluded, consistent with the multiple opinions discussed above, that George's obligation to register as required under the Attorney General's guidelines was not dependent on the state's implementation of the Act.[8]

Accordingly, in none of the cases cited by the Government did the sex offender's indicted failure to register occur before the Act was applicable to him under the effective date of SORNA against such offenders under that circuit's law. This Court does not disagree with the proposition that the failure of a state to implement SORNA does not affect the independent obligation of a sex offender to register under the Act.[9] But that

---

[8]As noted *supra*, at footnote 4, a subsequent panel of the Ninth Circuit agreed with this Court that the effective of date of SORNA as against pre-enactment sex offenders was August 1, 2008. *Valverde*, 628 F.3d at 1160.

[9]In a thorough and well-reasoned opinion by the District Court in *United States v. Cotton*, 760 F. Supp. 2d 116, 133 (D.D.C. 2011), the court discussed this issue concluding that: "The structure of SORNA's requirements indicates that the sex offenders' individual duty to register and the State's duty to enhance its registries and standards as mandated by the Act are separate." The court then concluded that: "Cotton's duty to register under SORNA existed, then, whether or not D.C. had implemented SORNA's enhanced registration and notification standards." *Id.* Significantly, the court, which adopted this Circuit's August 1, 2008 effective date for SORNA's applicability to pre-enactment sex offenders, addressed this

sex offender must be required, in the first instance, to register under the Act.  As the Supreme Court recently held in *Carr*: "Congress meant the first precondition to § 2250 liability to be the one it listed first: a "require[ment] to register under [SORNA]."  130 S. Ct. at 2235-36.

As Trent's counsel pointed out to the Court at oral argument in this matter, and as discussed above, this Court diverged from the basic premise of the *Shenandoah* line of reasoning long ago when it decided *Cain* and *Utesch*.  Each of these other circuits concluded either that the Act was self-effectuating against sex offenders with a pre-existing obligation to register or that the Attorney General's regulations were final and enforceable on February 28, 2007.  Indeed, most of the cases rely on the Attorney General's regulations to support their conclusion that a sex offender's duty to register under the Act is not dependent on a particular jurisdiction's implementation of SORNA. Had Trent been convicted in a jurisdiction that has adopted February 28, 2007, as the effective date of the Attorney General's regulations specifying retroactive application of the Act to all sex offenders, or in a jurisdiction that has held that SORNA was self-effectuating against all sex offenders on the date of its enactment, his failure to register in November, 2007, would have been indictable under the Act.  Because Trent's failure to register occurred before SORNA was applicable to him in this Circuit, i.e., before August 1, 2008, his case is different and he cannot be prosecuted under the Act for his 2007 failures to register not simply because Ohio (or Indiana) had not fully implemented SORNA but because, as a pre-implementation sex offender, he was not required at that time to register under the Act in the first instance.

---

issue only after first noting that only failures to register after that date were indictable under the Act. "[T]he charging period in Cotton's indictment extends three months beyond the August 1, 2008 SORNA effective date and therefore the indictment should not be dismissed at this time." *Id*. at 132.

**E.     The Government Offers No Persuasive Authority for Addressing the Retroactive Application of SORNA as to Pre-Enactment and Pre-Implementation Sex Offenders Differently**

Although Trent did not rely on *Cain* or *Utesch* in his brief on appeal, the Government recognized in its brief on appeal that in *Cain*, "this Court held that the plain reading of § 16913(d) indicates that the Attorney General was delegated authority to determine if, and when, SORNA applies to pre-SORNA sex offenders who, like Cain, had been convicted of a sex offense prior to the [sic] July 27, 2006, the effective date of SORNA, and that, until the Attorney General acted on that delegated authority, pre-SORNA sex offenders, like Cain, were not covered by SORNA."   The Government argues, however, that notwithstanding this holding, *Cain* (and *Utesch*) should not be extended to cover the category of offenders who, like Trent, were convicted after SORNA's July 27, 2006, date of enactment but before implementation of SORNA in a particular jurisdiction.

The Government cites dicta from *Cain* in which this Court stated: "Congress required immediate registration of all sex offenders convicted after SORNA . . . ." 583 F.3d at 416.  But this Court was presented in *Cain* only with the issue of a pre-enactment sex offender and had no occasion to consider the situation of post-enactment sex offender who fell within the second category of sex offenders whose fate was reserved, by the plain language of subsection (d) of section 16913, to determination by the Attorney General, i.e. those with pre-implementation sex offenses.  Clearly Congress, aware that virtually every state had in place a pre-existing sex offender registration system, felt it important in applying SORNA to know whether implementation of SORNA had occurred in a particular jurisdiction and thought it important to give the Attorney General regulatory authority with respect to requiring registration in those jurisdictions.  While the Government argues that SORNA just "piggybacks" on the states' existing state registration systems, inferring that this somehow justifies its limiting interpretation of those "pre-implementation" sex offenders to be captured by subsection (d), there is no question that SORNA contemplates a complex system of cooperation between the federal government and the states and has the potential to

significantly increase a state's sex registration and notification obligations in many instances, also creating new and greater penalties for offenders:

> SORNA directly prescribes registration requirements that sex offenders must comply with, and authorizes the Attorney General to augment or further specify those requirements in certain areas. See §§ 113(a)-(d), 114(a), 115(a), 116. These requirements are subject to direct federal enforcement, including prosecution under 18 U.S.C. 2250 where violations occur under circumstances supporting federal jurisdiction . . . SORNA provides incentives for states and other covered jurisdictions to incorporate its registration requirements for sex offenders, and other registration and notification-related measures set out in other provisions of SORNA, into their own sex offender registration and notification programs.

73 Fed. Reg. 38034 (Final SMART Guidelines).

Basic canons of statutory construction also support the Court's holding. To conclude that this second category of statutorily carved-out sex offenders should be treated differently from the category of pre-enactment sex offenders addressed in *Cain* would render the entire second half of the conjunction in the first clause of § 16913(d), "or its implementation in a particular jurisdiction," totally meaningless. It is clear that to fall into the second category of sex offenders, those convicted before implementation of the Act in a particular jurisdiction, the sex offender must have been convicted after the enactment of SORNA. If convicted before enactment, the sex offender would fall into the first category and the second category would be unnecessary. Moreover, a jurisdiction cannot logically have failed to implement a statute that had not yet been enacted. If Congress meant to limit the Attorney General's authority to specify retroactive application of SORNA only to pre-enactment sex offenders, the reference to pre-implementation would have been totally superfluous. "We must interpret the statute as a whole, making every effort not to interpret a provision in a manner that renders other provisions of the same statute inconsistent, meaningless, or superfluous." *United States v. Webb*, 30 F.3d 687, 690 n. 4 (6th Cir. 1994) citing *Greenpeace, Inc. v. Waste Technologies Indus.*, 9 F.3d 1174, 1179 (6th Cir.1993).

The Government has not demonstrated "'that, as a matter of historical fact, Congress did not mean what it appears to have said, or that, as a matter of logic and statutory structure, it almost surely could not have meant it.'"  *United States v. Cotton*, 760 F. Supp. 2d 116, 125 (D.D.C. 2011) (quoting *Nat'l Public Radio, Inc. v. F.C.C.*, 254 F.3d 226, 230 (D.C. Cir. 2001)).  Indeed, as discussed above, the fact that the Attorney General addressed both pre-enactment and pre-implementation sex offenders under the subject of retroactivity in the SMART Guidelines, including discussion of hypothetical situations involving sex offenders with and without pre-existing obligations to register under state law, indicates that he interpreted his authority to determine retroactive application of the Act to extend to both groups of sex offenders.  The Government offers no persuasive authority for its argument that pre-implementation sex-offenders like Trent were not under the umbrella of the Attorney General's authority to specify retroactive application of the Act because of a pre-existing duty to register under state law.  There is no statutory basis for treating the pre-implementation category of sex offenders differently from pre-enactment sex offenders or for treating some sub-set of the pre-implementation sex offenders differently, i.e., those who were under a pre-existing duty, at the time of their conviction, to register under the laws of the particular jurisdiction that seeks to convict them.  The Government urges this Court to conclude that by including in subsection (d) language regarding pre-implementation sex offenders, Congress meant only to capture those pre-implementation sex offenders who did not have a duty to register under state law until the SORNA "upgrades" were adopted by a particular jurisdiction.  This is simply another way of arguing that a pre-existing duty to register under state law in and of itself renders SORNA immediately applicable to any sex offender, without further specification from the Attorney General, an argument this Court has long since rejected.  There is simply no support in the statute or this Court's prior rulings for such an interpretation.

In this Circuit, for pre-enactment and pre-implementation sex offenders alike, August 1, 2008, is the effective date of SORNA.  In this case, Trent's indicted failure to register is not actionable under SORNA because Trent was within that second category of pre-implementation sex offenders as to whom Congress delegated to the Attorney

General the sole authority to specify SORNA's applicability. Under this Court's prior holdings in *Cain* and *Utesch*, it is established that the Attorney General did not validly exercise that authority until August 1, 2008.

The fact that the Attorney General has now validly exercised the authority granted by SORNA and ruled that the registration requirements apply retroactively to all sex offenders regardless of the date of their underlying conviction cannot alter the clear intent on the part of Congress to give this authority in the first instance to the Attorney General. As this Court noted in *Cain*, "[t]hat the Attorney General has opted to require full coverage now does not prove that Congress did not want the Attorney General to have this flexibility to relax SORNA's requirements on some sex offenders if states had (or began having) difficulty fully implementing its requirements." 583 F.3d at 417. While this interpretation of section 16913(d) no doubt creates a limited reprieve from the Act's requirements for certain sex offenders whom the Attorney General has chosen through rule making to bring within the statute's reach, it is not within the province of this Court to reinterpret the plain language of the statute and to reach through statutory interpretation a result that was intended to be achieved only through the rule making authority of the Attorney General. "Congress could have explicitly denoted that SORNA's registration requirements applied to pre-enactment [or pre-implementation] offenders, but it did not. A belief that such an application would advance the statute's broader goals cannot free the interpretive enterprise from plain text." *Johnson*, 632 F.3d at 927. The Attorney General was given the flexibility to address, if necessary, state concerns with implementation or possible issues of a constitutional dimension before retroactively applying the Act's registration requirements to these two groups of offenders. Contrary to the Government's suggestion otherwise, this Court's holding today does not render Trent's duty to register under SORNA dependent on the "if come" of a particular jurisdiction's decision to implement SORNA. Trent's duty to register is dependent on the Attorney General's exercise of his authority to specify applicability of the Act to sex offenders in Trent's category, which the Attorney General did with great precision, effective August 1, 2008. The Government's argument fails because the Attorney General's regulations regarding

retroactive application of the Act to pre-enactment and pre-implementation sex offenders were not final and effective until August 1, 2008, long after Trent traveled and failed to register under the Act in November, 2007.

## III.     CONCLUSION

For the foregoing reasons, we **REVERSE** the ruling of the District Court and **DISMISS** the indictment.