*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 12a0052p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

UNITED STATES OF AMERICA,

*Plaintiff-Appellant,*

*v.*

Nos. 10-1043/1117

DERICK STEVENSON; CARLOS FLOWERS,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 09-20306-001—Stephen J. Murphy III, District Judge.

Decided and Filed: February 23, 2012

Before: MERRITT and MOORE, Circuit Judges; MAYS, District Judge.[*]

———————————

**COUNSEL**

**ON BRIEF:** Patricia Gaedeke, ASSISTANT UNITED STATES ATTORNEY, Detroit, Michigan, for Appellant. Todd A. Shanker, FEDERAL DEFENDER OFFICE, Detroit, Michigan, for Appellees.

———————————

**OPINION**

———————————

KAREN NELSON MOORE, Circuit Judge. Carlos Flowers and Derick Stevenson were both convicted of state-law sex offenses requiring them to register before the enactment of the federal Sex Offender Registration and Notification Act ("SORNA"), 120 Stat. 590, 42 U.S.C. § 16901 *et seq.* (2006 ed. and Supp. III). Both were indicted for traveling in interstate commerce in 2009 and knowingly failing to

---

[*] The Honorable Samuel H. Mays, Jr., United States District Judge for the Western District of Tennessee, sitting by designation.

1

update their registrations. The district court dismissed each of their indictments, holding that SORNA had not yet been made retroactively applicable to defendants like Flowers and Stevenson. The United States timely appealed, and their cases were consolidated. We reaffirm our analysis in *United States v. Utesch*, 596 F.3d 302 (6th Cir. 2010), which was decided after the district court issued its opinions, and hold that SORNA became retroactively effective on August 1, 2008. We therefore **REVERSE**.

## I. BACKGROUND

Stevenson and Flowers were both convicted of state-law crimes that required them to register as sex offenders before the enactment of SORNA. In 1997, Stevenson was convicted of contributing to the delinquency of a minor in the state of Louisiana, which required him to register as a sex offender in Louisiana.[1] In 1994, Flowers was convicted of second-degree criminal sexual conduct in the state of Michigan, which required him to register as a sex offender under Michigan law.

In 2009, Stevenson and Flowers were each indicted for traveling in interstate commerce and knowingly failing to update their registrations in violation of 18 U.S.C. § 2250(a). Stevenson allegedly traveled without updating his registration between March and June 2009 and was indicted on July 8, 2009. Flowers allegedly traveled without updating his registration in May 2009 and was indicted on September 15, 2009.

Both Stevenson and Flowers moved to dismiss their indictments, arguing that SORNA did not retroactively apply to them. While their motions were pending, we issued our opinion in *United States v. Cain*, 583 F.3d 408 (6th Cir. 2009), holding that SORNA was not made retroactive of its own force. We also held that the Interim Rule issued by the Attorney General on February 28, 2007, failed to make SORNA retroactive because it violated the Administrative Procedure Act. *Cain*, 583 F.3d at 424. The district court dismissed both Stevenson's and Flowers's indictments on the basis of *Cain*,

---

[1]The record is not entirely clear when Stevenson was convicted and for what exactly he was convicted. Regardless, the parties agree that Stevenson had a prior state conviction for a sex offense that would require him to register, but that the conviction was before the enactment of SORNA.

holding that no valid rule had yet been promulgated at the time of Flowers's and Stevenson's interstate travel.  The government timely appealed both dismissals.

## II.  ANALYSIS

We review de novo the applicability of a statute such as SORNA.  *Utesch*, 596 F.3d at 306.

### A.  Overview of SORNA

SORNA became effective on July 27, 2006, the date that the President signed it into law.  *Cain*, 583 F.3d at 411.  SORNA makes it a crime for an individual who is required to register under the act to travel in interstate commerce and fail to register.  *See* 18 U.S.C. § 2250(a).  The registration requirement is spelled out in 42 U.S.C. § 16913 and permits the Attorney General to "specify the applicability of the requirements of this subchapter to sex offenders convicted before the enactment of this chapter."  42 U.S.C. § 16913(d).  The Attorney General is also instructed to "issue guidelines and regulations to interpret and implement this subchapter."  42 U.S.C. § 16912(b).

On February 28, 2007, the Attorney General issued an interim rule making SORNA immediately effective to all sex offenders, including those convicted of the offense for which registration is required before SORNA's enactment.  28 C.F.R. § 72.3 ("Interim Rule"); 72 Fed. Reg. 8894.  The Attorney General maintained that the rule qualified for the "good cause" exception to the procedural requirements of the Administrative Procedure Act ("APA"), 5 U.S.C. § 553(b)(3)(B).  The Attorney General nonetheless announced he would accept comments until April 30, 2007.

On May 30, 2007, the Attorney General published proposed guidelines from the Office of Sex Offender Sentencing, Monitoring, Apprehending, Registering, and Tracking, called the SMART guidelines.  The SMART guidelines stated that they were promulgated pursuant to the Attorney General's authority under 42 U.S.C. § 16912(b) to interpret and implement SORNA and restated the Attorney General's position that SORNA applied to all sex offenders, "including those whose convictions predate the enactment of the Act."  72 Fed. Reg. 30,210, 30,212.  These guidelines were made open

to comments until August 1, 2007. On July 2, 2008, the Attorney General published the final version of the SMART guidelines. 73 Fed. Reg. 38,030. In the final version, the Attorney General responded to comments regarding the issue of retroactivity, but kept the language the same. The final SMART guidelines stated their effective date as July 2, 2008, the date of publication.

On December 29, 2010, the Attorney General, without conceding that the Interim Rule and the SMART guidelines were invalid, responded further to the comments he had received on the issue of retroactivity and "finaliz[ed]" the Interim Rule to dispel any doubts regarding the retroactivity of SORNA. 75 Fed. Reg. 81,849, 81,850. The Attorney General stated that the effective date of this latest final rule was January 28, 2011, which was thirty days after its publication.

**B.  Current Law on Retroactivity of SORNA**

Absent a valid rule by the Attorney General, SORNA is not retroactive to defendants like Flowers and Stevenson who were convicted of sex offenses requiring them to register before July 27, 2006. *Reynolds v. United States*, 132 S. Ct. 975, 984 (2012) (resolving Circuit split); *Cain*, 583 F.3d at 419. Pre-enactment offenders cannot be convicted of violating SORNA for interstate travel completed before the Attorney General issues a final rule. In deciding *Reynolds*, the Supreme Court left open whether any of the many rules issued after SORNA's enactment constituted such a valid rule. It simply ruled that SORNA's retroactive application to prior offenders was not self-executing. The only issue in the case before us, therefore, is whether the Attorney General had issued a valid rule at the time of Stevenson's and Flowers's interstate travel in 2009.

In *Cain*, 583 F.3d at 422-24, we held that the Interim Rule issued by the Attorney General in February 2007 was not valid under the APA because the Attorney General lacked good cause to dispense with the notice-and-comment and thirty-day publication

requirements.**2** Because the defendant in *Cain* traveled in March of 2007, before the close of the comments period, the court in *Cain* took no position regarding whether SORNA would be validly retroactive against those who traveled following the close of comments on April 30, 2007, or thirty days thereafter on May 30, 2007. *Id.* at 423 n.6, 424 n.7.

We resolved the issue left open in *Cain* when we decided *Utesch*. 596 F.3d at 310. The defendant in *Utesch* traveled interstate in November 2007. *Utesch* held that the Interim Rule was invalid under the APA, even following the close of comments and thirty days of publication. *Id.* ("[W]e have no indication that the notice-and-comment process was actually carried out."). We held this procedural deficiency was not harmless error because the "affected parties [had] no opportunity to participate in the crafting of the interim rule *before* it purported to take effect against them." *Id.* at 312.

*Utesch* also held that the preliminary SMART guidelines published in May 2007 could not make SORNA retroactive because the APA process was not complete at the time of the defendant's travel in November 2007. *Id.* at 310-11. We concluded, however, that the process used by the Attorney General for the final SMART guidelines was "precisely what the APA requires." *Id.* at 310. The guidelines were made available for comment, and following review and discussion of the comments, the Attorney General issued a final rule on July 2, 2008. Because the APA requires thirty days before a rule can become effective, we determined that the SMART guidelines became effective on August 1, 2008.

---

**2**The Fourth, Seventh, and Eleventh Circuits have disagreed, holding that the Interim Rule is valid. These Circuits use February 28, 2007, as the date SORNA became retroactively applicable to pre-enactment offenders. *United States v. Gould*, 568 F.3d 459 (4th Cir. 2009), *cert. denied*, 130 S. Ct. 1686 (2010); *United States v. Dixon*, 551 F.3d 578, 582 (7th Cir. 2008), *rev'd on other grounds sub nom. Carr v. United States*, — U.S. —, 130 S. Ct. 2229 (2010); *United States v. Dean*, 604 F.3d 1275 (11th Cir.), *cert. denied*, 131 S. Ct. 642 (2010). The Fifth Circuit also uses the Interim Rule, but not because it was valid; rather, the Fifth Circuit has held that the errors in promulgation were harmless. *United States v. Johnson*, 632 F.3d 912, 930 (5th Cir.), *cert. denied*, 132 S. Ct. 135 (2011). The Ninth Circuit has followed our approach, concluding the Interim Rule was neither valid nor the error harmless, but that the later-finalized SMART guidelines were valid. *United States v. Valverde*, 628 F.3d 1159, 1164 (9th Cir. 2010), *cert. denied*, — S. Ct. —, No. 11-40, 2012 WL 538716 (Feb. 21, 2012). The remaining Circuits took the position recently rejected by the Supreme Court in *Reynolds*, that SORNA was made retroactive upon its enactment.

The government's sole argument on appeal is that the district court's dismissals of Stevenson's and Flowers's indictments must be reversed because *Utesch* "held" that SORNA became retroactive on August 1, 2008. Stevenson and Flowers were indicted for traveling and failing to register in 2009. If the SMART guidelines were indeed a valid final rule, the district court's holdings must be reversed. Although the government is correct that *Utesch* unequivocally states, "SORNA became effective against offenders convicted before its enactment . . . on August 1, 2008," 596 F.3d at 311, the defendants are correct that this language is technically dictum because it was not necessary to the holding. *See Williams v. Anderson*, 460 F.3d 789, 811 (6th Cir. 2006). At issue in *Utesch* was only whether the *proposed* SMART guidelines could be a valid final rule, because those were the only published guidelines available at the time of the defendant's interstate travel. Although useful to our analysis, our conclusion regarding when the SMART guidelines became final was not required in order for us to hold that there was no valid rule in place at the time of Utesch's travel in November 2007 or for us to hold that the Attorney General's errors in promulgating the Interim Rule were not harmless.

The government also argues that this court's opinion in *United States v. Trent*, 654 F.3d 574, 581 (6th Cir. 2011), *cert. denied*, — S. Ct. —, No. 11-611, 2012 WL 538719 (Feb. 21, 2012), confirmed that the effective-date language in *Utesch* was not dicta. This argument is unavailing, however, because the defendant in *Trent* was also indicted for travel in the fall of 2007, well before the SMART guidelines were final. Therefore, although the *Trent* court's discussion of the analysis in *Utesch* further supports the soundness of using August 1, 2008, as the date SORNA became retroactive, the language remains not binding. *Williams*, 460 F.3d at 811.

At this time, we have not found any Court of Appeals that has addressed the question of the validity of the final SMART guidelines to a defendant who traveled after August 1, 2008. The Ninth Circuit also uses August 1, 2008, as the date SORNA became retroactive, but announced the rule under similar circumstances as we did in *Utesch*, where the defendant's travel was prior to the finalization of those guidelines. *United States v. Valverde*, 628 F.3d 1159, 1164 (9th Cir. 2010), *cert. denied*, — S. Ct.

—, No. 11-40, 2012 WL 538716 (Feb. 21, 2012); *see also United States v. Dietrich*, 409 F. App'x 993, 994 (9th Cir. 2011) (unpublished opinion).

Of the few district courts to address interstate travel by defendants following August 1, 2008, all have used the date that the SMART guidelines became final as the date that SORNA became retroactive, with the exception of the district court in this case. *See, e.g.*, *United States v. Kidd*, No. 3:11-CR-20, 2011 WL 3352457, at *5-6 (E.D. Tenn. Aug. 3, 2011); *United States v. Mattix*, Crim. No. 10-397-HA, 2011 WL 1792144, at *2-4 (D. Or. May 10, 2011), *appeal docketed*, No. 12-30013 (9th Cir. Jan. 10, 2012); *United States v. Ross*, 778 F. Supp. 2d 13, 20-23 (D.D.C. 2011); *United States v. Cotton*, 760 F. Supp. 2d 116, 132 (D.D.C. 2011); *United States v. Jackson*, No. CR-09-1115 JF, 2010 WL 3325611, at *13-14 (N.D. Cal. Aug. 23, 2010) (order); *United States v. Coleman*, Crim. No. 09-30-ART, 2009 WL 4255545, at *2 (E.D. Ky. Nov. 24, 2009). To the extent that the defendants in these cases raised challenges to the SMART guidelines under the APA, and it is not clear how extensively they did, the district courts consistently rejected such arguments. *See, e.g.*, *Mattix*, 2011 WL 1792144, at *4; *Ross*, 778 F. Supp. 2d at 21-22.

For the reasons set forth below, we hold that our reasoning in *Utesch* remains sound; the SMART guidelines made SORNA retroactive when they became final on August 1, 2008. The defendants' arguments to the contrary are not persuasive.

## C. Validity of SMART Guidelines

The district court accepted the defendants' argument that the SMART guidelines did not make SORNA retroactively applicable to Flowers and Stevenson:

> Careful review of these proposed and final [SMART] guidelines, however, demonstrates they were not promulgated for the purposes of making § 16913 applicable to persons convicted prior to July 27, 2006. Rather, they were issued pursuant to a different authority given the Attorney General under 42 U.S.C. § 16912(b), *requiring* him (rather than giving him discretion as under the grant of authority in § 16913(d)) to issue guidelines and regulations to interpret and implement SORNA.

Stevenson Docket, R. 22 (D. Ct. Op. & Order at 11).

The defendants raise this same argument in response to the government's appeal. They do not argue that the SMART guidelines violate any of the other necessary notice-and-comment procedures under the APA. Nor do they argue that the Attorney General lacks the authority at all under SORNA to establish retroactivity. Rather, the defendants argue that the SMART guidelines should not be deemed a valid rule *on retroactivity* because they were promulgated pursuant to the Attorney General's authority under § 16912(b), not his authority under § 16913(d). They argue that § 16912(b) authorizes the Attorney General to issue only interpretative guidance on SORNA, not substantive rules, and even if § 16912(b) did authorize substantive rules, a rule regarding retroactivity promulgated under § 16912(b) would be outside the scope of the enabling statute because only § 16913(d) gave the Attorney General the power to establish retroactivity.[3] We reject these arguments for three reasons.

First, the SMART guidelines themselves adequately make reference to both § 16912(b) and § 16913(d) for legislative authority. The defendants are correct that the proposed guidelines state that they were enacted to "carry out a statutory directive to the Attorney General in section 112(b) of SORNA (42 U.S.C. 16912(b)) to issue guidelines to interpret and implement SORNA." 72 Fed. Reg. 30,210, 30,210. However, in the discussion of retroactivity, the proposed SMART guidelines do not merely refer back to the Interim Rule, as the defendants claim. The SMART guidelines state: "The applicability of the SORNA requirements is not limited to sex offenders whose predicate sex offense convictions occur following a jurisdiction's implementation of a conforming registration program. Rather, SORNA's requirements apply to all sex offenders, including those whose convictions predate the enactment of the Act." 72 Fed. Reg. 30,210, 30,212. Only then does the provision reiterate that the Attorney General has the authority to do so "pursuant to the authority under SORNA section 113(d) [§ 16913(d)]" and did in fact do so in the Interim Rule. *Id.* The APA does not require that the proposed rule cite the relevant legal authority in a certain location, but rather requires just that notice must be given for any proposed rule. 5 U.S.C. § 553(b)(2). We do not

---

[3]The defendants also argued that Congress lacked the constitutional authority to delegate this power to the Attorney General; however, that argument is foreclosed in light of *Reynolds*. 132 S. Ct. 975.

hesitate to find that the SMART guidelines adequately gave notice of the relevant legal authority in this case.[4]

Second, even if the SMART guidelines were solely promulgated under § 16912(b), the Attorney General still had the authority to address the retroactivity of SORNA in substantive rules pursuant to § 16912(b), because § 16912(b) incorporates by reference § 16913(d).

As an initial matter, the defendants are incorrect that § 16912(b) provides the Attorney General authority solely to interpret SORNA and not to make substantive rules. By its own terms, § 16912(b) authorizes the Attorney General to make both interpretative and substantive rules because it unambiguously permits the Attorney General to make rules regarding both the interpretation *and* implementation of the sections therein. Substantive rules are "rules that *implement* the statute." *Chrysler Corp. v. Brown*, 441 U.S. 281, 302 n.31 (1979) (internal quotation marks omitted) (emphasis added). Interpretive rules, which explicate the meaning of statutes, are less restrictive because they do not have the force or effect of law. *Id.*[5] When, as here, Congress has "directly spoken to the precise question at issue . . . [we] must give effect to the unambiguously expressed intent of Congress." *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984); *Citizens Coal Council v. U.S. E.P.A.*, 447 F.3d 879, 890-92 (6th Cir. 2006) (en banc). Section 16912(b) unambiguously gives the Attorney General the authority to make substantive rules on how to implement SORNA.[6]

---

[4]Although it does not appear that the parties in *Utesch* made the arguments before us today, we note that *Utesch* viewed the SMART guidelines as "promulgated by the Attorney General pursuant to § 16913(d)." *Utesch*, 596 F.3d at 308.

[5]We previously held in *Cain*, 583 F.3d at 420, that any rule on SORNA's retroactivity would be a substantive rule, requiring compliance with the APA.

[6]The Attorney General's recent finalization of the Interim Rule, *see* 75 Fed. Reg. 81,849, does not establish that the SMART guidelines were not a final substantive rule, as the defendants suggest. The final rule makes clear that the Attorney General did not necessarily disagree with our discussion in *Utesch* or agree with our holding in *Cain*, but rather he was merely clarifying his prior position to expel all doubt. 75 Fed. Reg. 81,849, 81,850.

Section 16912(b) also unambiguously instructs the Attorney General to make the necessary regulations to "implement this subchapter." 42 U.S.C. § 16912(b). The applicable "subchapter" in this case is "Subchapter I - Sex Offender Registration and Notification," 42 U.S.C. §§ 16901-16962. Section 16913(d) indisputably falls within that subchapter. Although § 16912(b) does not explicitly authorize the Attorney General to make rules on retroactivity, we cannot ignore that § 16912(b) instructs the Attorney General to implement the subchapter, and the subchapter includes the specific option of making a rule on retroactivity. *See Reynolds*, 132 S. Ct. at 981-82 (recognizing Congress charged the Department of Justice with examining the many potential applications of SORNA and implementing SORNA accordingly, citing in part § 16912(b)); *see also Chevron*, 467 U.S. at 842-43 (deferring to agency's permissible construction of the statute if language is ambiguous). When Congress broadly authorizes an agency to implement the remainder of a statute in one section and then specifies in the very next section a specific type of rule the agency is expressly authorized to make, we can hardly fault the agency for citing the section giving it broad authorization when issuing substantive rules including the specific one expressly authorized in another section of the exact same statute. This is consistent with our review of agency rules with reference to the enabling statute as a whole, not any particular provision in isolation. *Nat'l Cotton Council of Am. v. U.S. E.P.A.*, 553 F.3d 927, 933 (6th Cir. 2009) (citing *Nat'l Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 666 (2007)), *cert. denied*, 130 S. Ct. 1505 (2010); *see also Riverkeeper, Inc. v. U.S. E.P.A.*, 358 F.3d 174, 185-86 (2d Cir. 2004) (analyzing extent of agency's authorization in enabling statute with reference to other sections explicitly cross-referenced in statute). Best practices may include citing all relevant sections of an enabling statute, but failure to do so does not establish that this rule was outside the scope of Congress's authorization.

Finally, any error with respect to the Attorney General's recitation of the proper legal authority was not prejudicial. *See* 5 U.S.C. § 706. As we discussed in *Utesch*, 596 F.3d at 311-13, the key to whether an agency's procedural error in promulgating a rule is harmless error hinges not on whether the same rule would have issued absent the error, but whether the affected parties had sufficient opportunity to weigh in on the proposed

rule. *Id.* at 312 (citing *Riverbend Farms, Inc. v. Madigan*, 958 F.2d 1479, 1487 (9th Cir.), *cert. denied*, 506 U.S. 999 (1992)). "[W]hen the purposes of the procedural requirements have been fully met, there is no need for the courts to require rigid adherence to formalistic rules." *Brown v. Williamson Tobacco Corp. v. F.T.C.*, 710 F.2d 1165, 1174 (6th Cir. 1983), *cert. denied*, 465 U.S. 1100 (1984). Even if the proposed SMART guidelines referenced primarily § 16912(b), they also unequivocally stated that the SORNA would apply retroactively. The Attorney General received and addressed numerous comments from the public on the issue of retroactivity. *See* 73 Fed. Reg. 38,030, 38,035-36.[7] Therefore, the parties cannot complain of either a lack of adequate notice or opportunity to be heard meaningfully on the issue of retroactivity. *See Utesch*, 596 F.3d at 310 (requiring "actual consideration of public commentary"); *Brown*, 710 F.2d at 1173. We are therefore confident that the Attorney General's initial citation to § 16912(b), even if a technical violation of the APA's notice requirement, "clearly had no bearing on the procedure used or the substance of decision reached." *Riverbend Farms*, 958 F.2d at 1487 (internal quotation marks omitted).

For all these reasons, the SMART guidelines can and do have the force and effect of law, and they establish that SORNA became retroactive as of August 1, 2008. The Attorney General was properly delegated authority by Congress to enact the substantive rule regarding retroactivity and the authority to implement SORNA. The SMART guidelines clearly set forth the rule on retroactivity and the authority to issue such a rule and were properly promulgated pursuant to all of the other notice-and-comment

---

[7]The defendants argue that the Attorney General's responses to comments on retroactivity demonstrated that he felt unable to address retroactivity at all in guidelines promulgated under § 16912(b). Appellee Br. at 14-15. When read in context, however, the referenced language makes no such suggestion. Rather, it appears that the Attorney General emphasized his unwillingness to implement SORNA under § 16912(b) in a manner that would be inconsistent with Congressional policy, not that he was drawing a line between his authority under § 16912(b) and § 16913(d). *See* 73 Fed. Reg. 38,030, 38,031 ("[Comments] that Congress was simply wrong in enacting SORNA's requirements for sex offender registration and notification, and that the Attorney General should mitigate the resulting harm by defining their scope of application as narrowly as possible . . . cannot be accepted or acted on in issuing guidelines 'to interpret and implement' SORNA, as SORNA § 112(b) requires the Attorney General to do."); *id.* at 38,035-36 ("The comments received do not establish that this legislative judgment is wrong, and in any event such a premise could not be accepted in the formulation of guidelines whose objective is to 'interpret and implement' SORNA's standards, see SORNA § 112(b), not to second-guess the legislative policies they embody."). We find it more telling that the Attorney General goes on to discuss the substantive merits of the comments on retroactivity, despite his belief that the Interim Rule was valid. *Id.* at 38,035-36.

requirements in the APA.[8]  They became final on August 1, 2008, thirty days after they were published.  *See Utesch*, 596 F.3d at 310-11; *Trent*, 654 F.3d at 582-83.

Having found no compelling argument to the contrary, we hold today what we first concluded in *Utesch*:  SORNA became retroactive to pre-enactment offenders on August 1, 2008.  The district court therefore erred in dismissing the indictments of Flowers and Stevenson, who traveled after the SMART guidelines became final.

### III.  CONCLUSION

For the foregoing reasons, we **REVERSE** the district court's dismissal of the indictments against Flowers and Stevenson.

---

[8]The SMART guidelines were published in the Federal Register on May 30, 2007, and made open to comments until August 1, 2007.  72 Fed. Reg. at 30,210, 30212.  The Attorney General published the final guidelines in the Federal Register on July 2, 2008, responding to the comments he received.  73 Fed. Reg. 38,030, 38,031, 38,035-36.  Applying the thirty-day advance publication requirement, the SMART guidelines became final August 1, 2008.