# United States Court of Appeals
## For the First Circuit

No. 12-1448

UNITED STATES OF AMERICA,

Appellee,

v.

ALVIN WHITLOW,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Rya W. Zobel, U.S. District Judge]

Before

Thompson, Circuit Judge,
Souter,* Associate Justice,
and Stahl, Circuit Judge.

Behzad Mirhashem, Federal Defender Office, District of New Hampshire, for appellant.
Randall E. Kromm, Assistant United States Attorney, with whom Carmen M. Ortiz, United States Attorney, was on brief, for appellant.

April 18, 2013

---

* Hon. David H. Souter, Associate Justice (Ret.) of the Supreme Court of the United States, sitting by designation.

**STAHL, Circuit Judge**.  Alvin Whitlow, a convicted sex offender, moved from the District of Columbia to Massachusetts in 2009 without complying with the Sex Offender Registration and Notification Act (SORNA or the Act), 42 U.S.C. §§ 16901-16962.  He was then arrested and indicted for violating 18 U.S.C. § 2250(a), which criminalizes a knowing failure to abide by SORNA's registration requirements.  Whitlow pled guilty, but has preserved a number of arguments he first made in an unsuccessful motion to dismiss the indictment, including that SORNA exceeds Congress's constitutional authority, that it includes an unconstitutional delegation of legislative power, and that no regulations have validly applied SORNA to offenders whose convictions, like his own, pre-date the Act.  After careful consideration of these contentions, we affirm.

## I.  Facts & Background

Because this appeal stems from a conviction via a guilty plea, the following facts are drawn from the plea colloquy and sentencing materials.  See United States v. Cintrón-Echautegui, 604 F.3d 1, 2 (1st Cir. 2010).  In 1988, Whitlow was convicted of assault with intent to rape in the District of Columbia Superior Court.  He served a term of incarceration and was then paroled.  This conviction required him to register as a sex offender with the District government.  See D.C. Code §§ 22-4402, 22-4014.  He last registered in the District in 2009, after which he moved to

-2-

Massachusetts without notifying the authorities in either jurisdiction. In June 2010, Whitlow was apprehended in Cambridge, Massachusetts. He admitted to knowingly failing to register as a sex offender upon his arrival in the Commonwealth.

A grand jury subsequently returned an indictment charging that Whitlow, "being a person required to register under [SORNA], and having traveled in interstate commerce," violated 18 U.S.C. § 2250(a) by "knowingly fail[ing] to register and to update a registration as required by [SORNA]." Whitlow moved to dismiss the indictment, arguing that SORNA contained an unlawful delegation of legislative power to the Attorney General, that the resulting regulations were invalid, that his prosecution violated the Constitution's Ex Post Facto Clause, and that SORNA and § 2250(a) exceed Congress's constitutional powers. Most of Whitlow's arguments were premised on the idea that SORNA did not, and could not, apply to him because his predicate sex-offender conviction predated the Act's passage. He acknowledged, however, that some of his arguments appeared to be foreclosed by our precedents. The district court agreed, denying the motion "in light of existing First Circuit law." Whitlow then pled guilty, but preserved his right to appeal the denial of his motion to dismiss the indictment. He now exercises that right, renewing all of his arguments except the Ex Post Facto Clause attack.

## II. Analysis

SORNA was enacted in 2006 to establish a comprehensive national system for the registration of sex offenders. 42 U.S.C. § 16901. To that end, the Act "requires those convicted of certain sex crimes to provide state governments with (and to update) information, such as names and current addresses, for inclusion on state and federal sex offender registries." Reynolds v. United States, 132 S. Ct. 975, 978 (2012). In turn, 18 U.S.C. § 2250(a) "imposes criminal penalties when a person required to register as a sex offender under SORNA knowingly fails to register after traveling in interstate commerce." United States v. DiTomasso, 621 F.3d 17, 19-20 (1st Cir. 2010), cert. granted and judgment vacated, 132 S. Ct. 1533 (2012). The issue in this case is whether Whitlow, whose predicate sex-offender conviction predates SORNA, was subject to its registration requirements when he traveled to Massachusetts in 2009 and then failed to register. If he was required to register, his conviction under § 2250(a) was proper. See Carr v. United States, 130 S. Ct. 2229, 2236 (2010).

In DiTomasso, we concluded that SORNA automatically applied to pre-Act offenders upon enactment. 621 F.3d at 22-25. The district court presumably had this ruling in mind when it denied Whitlow's motion to dismiss "in light of existing First Circuit law." But in Reynolds, decided after the district court's decision, the Supreme Court held to the contrary, explaining that

-4-

SORNA left it to the Attorney General to "specify" whether the Act applied to sex offenders convicted before its passage. 132 S. Ct. at 980-84; see 42 U.S.C. § 16913(d). Unless and until the Attorney General did so, SORNA applied only prospectively. Reynolds, 132 S. Ct. at 984. In light of Reynolds, the question here is whether, at the time of Whitlow's travel and failure to register in 2009, the Attorney General had issued valid regulations extending SORNA's registration requirements to pre-Act offenders. We have not previously considered this question because of our pre-Reynolds view that SORNA was automatically retroactive. United States v. Parks, 698 F.3d 1, 4 (1st Cir. 2012).[1]

The Attorney General has produced three sets of regulations that arguably applied SORNA to pre-Act offenders: the "Interim Rule" in February 2007, Applicability of the Sex Offender Registration and Notification Act, 72 Fed. Reg. 8,894 (Feb. 28, 2007); the "SMART Guidelines" in July 2008, The National Guidelines for Sex Offender Registration and Notification, 73 Fed. Reg. 38,030 (July 2, 2008); and the "Final Rule" in December 2010, Applicability of the Sex Offender Registration and Notification Act, 75 Fed. Reg. 81,849 (Dec. 29, 2010). The government does not argue that the 2010 Final Rule, which postdates Whitlow's travel

---

[1] For convenience, we sometimes use "retroactivity" to refer to SORNA's applicability to pre-Act offenders. We do not mean to imply that SORNA criminalizes travel that occurred before its enactment. See Carr, 130 S. Ct. at 2233 ("Liability under § 2250 . . . cannot be predicated on pre-SORNA travel.").

-5-

and arrest, could have applied to him.  Instead, the government says that either the Interim Rule or the SMART Guidelines (or both) had validly extended SORNA to pre-Act offenders by the time Whitlow failed to register in 2009.

Before we discuss any of these regulations individually, we briefly address Whitlow's two broader arguments.  First, Whitlow contends that none of the regulations are valid because SORNA's delegation to the Attorney General of the power to specify whether the Act is retroactive violates the constitutional non-delegation doctrine.  See Reynolds, 132 S. Ct. at 986-87 (Scalia, J., dissenting) (raising this issue).  Second, he argues that SORNA's registration scheme is itself unconstitutional because it exceeds Congress's enumerated Article I powers.  See United States v. Morrison, 529 U.S. 598, 607 (2000).  But, as Whitlow acknowledges, we have already rejected both of these contentions.  See Parks, 698 F.3d at 6-8 (addressing Commerce Clause and non-delegation doctrine arguments); DiTomasso, 621 F.3d at 26 & n.8 (addressing Commerce Clause and Necessary and Proper Clause challenges).[2]  These prior decisions are binding on us.  United States v. Troy, 618 F.3d 27,

_____

[2]    We note that the Supreme Court recently granted certiorari to consider the Fifth Circuit's en banc holding that SORNA exceeds Congress's Article I powers when applied to a pre-Act offender who, having been unconditionally released from federal custody, failed to register after an intrastate relocation.  See United States v. Kebodeaux, 687 F.3d 232, 253 (5th Cir. 2012) (en banc), cert. granted, 133 S. Ct. 928 (2013).  Because this case involves interstate travel (among other factual differences), it does not raise the same issues.

35 (1st Cir. 2010). Accordingly, we turn to Whitlow's more focused attacks on the Attorney General's regulations.

Whitlow's challenge to the February 2007 Interim Rule is based on the premise that the rule was promulgated without the notice-and-comment procedures required by the Administrative Procedure Act (APA), see 5 U.S.C. § 553, and without good cause for that lapse, see id. § 553(b)(3)(B). A number of other circuits have taken differing views on whether the Attorney General had good cause to skip the APA-mandated procedures in producing the Interim Rule, and on whether it matters (which may depend in part on the precise timing of the offense at issue). Compare, e.g., United States v. Gould, 568 F.3d 459, 470 (4th Cir. 2009) (good cause), and United States v. Johnson, 632 F.3d 912, 928-33 (5th Cir. 2011) (no good cause, but error was harmless), with United States v. Reynolds, ___ F.3d ___, 2013 WL 979058, at *7-20 (3d Cir. Mar. 14, 2013) (no good cause, and error was prejudicial), and United States v. Utesch, 596 F.3d 302, 310, 312-13 (6th Cir. 2010) (same). Here, though, Whitlow's interstate travel and failure to register occurred in 2009, after both the Interim Rule and the SMART Guidelines had been issued. Thus, if the SMART Guidelines had properly extended SORNA to pre-Act offenders by the time of Whitlow's offense, the Interim Rule's validity is beside the point. See United States v. Mattix, 694 F.3d 1082, 1083-85 (9th Cir. 2012) (per curiam); United States v. Stevenson, 676 F.3d 557, 561-62 (6th

Cir. 2012). We therefore bypass the Interim Rule and turn to the SMART Guidelines.

The SMART Guidelines did go through the notice-and-comment process. They were published in proposed form on May 30, 2007, see 72 Fed. Reg. 30,210, and in final form on July 2, 2008, see 73 Fed. Reg. 38,030. They became effective on August 1, 2008. Stevenson, 676 F.3d at 566. The final Guidelines "provide guidance and assistance to the states and other jurisdictions in incorporating the SORNA requirements into their sex offender registration and notification programs." 73 Fed. Reg. at 38,030. The Guidelines address a number of issues, including "the sex offenders required to register under SORNA and the registration and notification requirements they are subject to." Id. On the question of retroactivity, the final Guidelines provide:

> The applicability of the SORNA requirements is not limited to sex offenders whose predicate sex offense convictions occur following a jurisdiction's implementation of a conforming registration program. Rather, SORNA's requirements took effect when SORNA was enacted on July 27, 2006, and they have applied since that time to all sex offenders, including those whose convictions predate SORNA's enactment.

Id. at 38,046 (citing 28 C.F.R. § 72.3; 72 Fed. Reg. 8,894, 8895-96). The government says that this language plainly establishes SORNA's applicability to pre-Act offenders like Whitlow.

Whitlow makes three responses. First, he contends that the Attorney General issued the SMART Guidelines not under the authority to "specify" retroactivity conferred by 42 U.S.C. § 16913(d) and discussed in Reynolds, but instead under 42 U.S.C. § 16912(b), which instructs the Attorney General to "issue guidelines and regulations to interpret and implement this subchapter," i.e., SORNA. See 72 Fed. Reg. at 30,210 (stating that the proposed Guidelines "carry out" § 16912(b)'s interpret-and-implement directive). Thus, he says, the Guidelines could not validly determine retroactivity. This argument is apparently based on the APA's requirement that an agency's notice of proposed rulemaking "include . . . reference to the legal authority under which the rule is proposed." 5 U.S.C. § 553(b)(2); see Georgetown Univ. Hosp. v. Bowen, 821 F.2d 750, 759 (D.C. Cir. 1987), aff'd, 488 U.S. 204 (1988); 32 Charles Alan Wright & Charles H. Koch, Jr., Federal Practice & Procedure: Judicial Review § 8173, at 204 (1st ed. 2006). While we agree that compliance with this requirement is important, we do not agree that the SMART Guidelines run afoul of it.

To begin with, we do not believe that there was even a technical violation of § 553(b)(2) here. Whitlow is right that the proposed Guidelines identified § 16912(b), and not § 16913(d), as the source of the Attorney General's authority to issue the

-9-

Guidelines.[3]  But § 16912(b)'s interpret-and-implement authority
appears to subsume the narrower power to make retroactivity
determinations, because the "subchapter" that § 16912(b) tells the
Attorney General to "implement" (i.e., SORNA itself) includes
§ 16913(d), the retroactivity provision.  See 42 U.S.C., ch. 151,
subch. I.  As the Sixth Circuit put it, "we cannot ignore that
§ 16912(b) instructs the Attorney General to implement the
subchapter, and the subchapter includes the specific option of
making a rule on retroactivity."  Stevenson, 676 F.3d at 564.  To
be sure, "[b]est practices may include citing all relevant sections
of an enabling statute," id. at 565, but it appears that the
Attorney General actually did identify a statutory provision that
gave him the power to issue a rule on retroactivity, which is what
§ 553(b)(2) required here.[4]

Having said that, we can imagine a scenario in which the
invocation of a broad enabling statute that technically encompasses

---

[3]  The government points out that the proposed Guidelines did cite § 16913(d) in discussing retroactivity and the Interim Rule, see 72 Fed. Reg. at 30,212, but § 553(b)(2) requires that the source of the issuing agency's authority be invoked as such, not that it merely be mentioned in passing.  Cf. Nat'l Tour Brokers Ass'n v. United States, 591 F.2d 896, 900 (D.C. Cir. 1978).

[4]  There is no merit to Whitlow's suggestion that the SMART Guidelines themselves recognize that § 16912(b) "is an inappropriate mechanism[] for imposing" retroactivity.  The language he relies on simply rejects the premise that the Attorney General should eschew retroactivity because SORNA was a bad idea in the first place.  73 Fed. Reg. at 38,031; see Stevenson, 676 F.3d at 565 n.7.

a more specific authority might leave the public unclear as to the ostensible basis and scope of the agency's authority, thus frustrating the purpose of § 553(b)(2). But this is not such a case. Ultimately, § 553(b)(2) functions to ensure that the agency considers whether it actually has the authority to make the rule it is proposing, and to give interested parties a chance to comment on that question. See Koretoff v. Vilsack, 707 F.3d 394, 398 (D.C. Cir. 2013); ConocoPhillips Co. v. EPA, 612 F.3d 822, 833 (5th Cir. 2010). Here, we see no reason -- and Whitlow offers none -- why the proposed Guidelines' invocation of § 16912(b) and their discussion of retroactivity would not have placed interested parties on notice of the Attorney General's intent and enabled them to offer comment and argument about his authority to issue the Guidelines as proposed. Cf. ConocoPhillips Co., 612 F.3d at 834. Indeed, the final Guidelines reflect that the Attorney General did receive and consider comments about SORNA's retroactivity. 73 Fed. Reg. at 38,031. Consequently, we think the notice complied with both the letter and the spirit of § 553(b)(2).

That brings us to Whitlow's second attack on the SMART Guidelines: that they did not validly extend SORNA to pre-Act offenders because they "assumed" retroactivity rather than "established" it. The notion is that the proposed Guidelines simply restated the Attorney General's belief that the Interim Rule had already extended the law to pre-Act offenders. See 72 Fed.

-11-

Reg. at 30,212 ("SORNA's requirements apply to all sex offenders, including those whose convictions predate the enactment of the Act. The Attorney General has so provided in [the Interim Rule] . . . ."). Thus, says Whitlow, the proposed Guidelines deprived interested parties of the opportunity to comment on retroactivity by treating it as a settled question. Though ably advanced, this argument does not persuade us.

Where an agency is accused of failing to provide adequate notice of the substance of the rules it is formulating, see 5 U.S.C. § 553(b)(3), "[t]he essential inquiry is whether the commenters have had a fair opportunity to present their views on the contents of the final plan. We must be satisfied . . . that given a new opportunity to comment, commenters would not have their first occasion to offer new and different criticisms." Natural Res. Def. Council, Inc. v. EPA, 824 F.2d 1258, 1283 (1st Cir. 1987) (quoting BASF Wyandotte Corp. v. Costle, 598 F.2d 637, 642 (1st Cir. 1979)). This question "always requires careful consideration on a case-by-case basis." Id. (quoting BASF Wyandotte, 598 F.2d at 642). The essential requirement "is one of fair notice." Long Island Care at Home, Ltd. v. Coke, 551 U.S. 158, 174 (2007).

Here, we are satisfied that would-be commenters had the requisite opportunity. Given that the notice of proposed rulemaking specifically discussed retroactivity, and that the SMART Guidelines were intended to create a comprehensive regime that

-12-

could supplement or displace the Interim Rule, it was natural for interested parties to understand that they could and should offer input on retroactivity. Cf. Int'l Union, United Mine Workers of Am. v. Mine Safety & Health Admin., 626 F.3d 84, 94 (D.C. Cir. 2010) (notice was adequate "if interested parties should have anticipated that the [resulting] change was possible" (citation omitted)). And, as noted above, the final Guidelines reflect that the Attorney General did receive comments on retroactivity, 73 Fed. Reg. at 38,035-36, and considered "the substantive merits" thereof, Stevenson, 676 F.3d at 565 n.7; see also 75 Fed. Reg. at 81,850 (noting that the comments received about retroactivity in response to the proposed Guidelines were similar to the comments received about the Interim Rule). On this record, it would not constitute a bait-and-switch to hold that the SMART Guidelines validly extended SORNA to pre-Act offenders. See Stevenson, 676 F.3d at 565; United States v. Mahoney, No. 11-CR-06-JL, 2013 WL 132460, at *5-6 (D.N.H. Jan. 9, 2013).

Finally, Whitlow argues that the SMART Guidelines "tie retroactivity to SORNA implementation by a particular jurisdiction, and thus did not make SORNA retroactively applicable in jurisdictions that had not yet implemented SORNA," including Massachusetts circa 2009. He relies, however, on language addressing the implementing jurisdictions' obligations, not those of covered offenders. See 73 Fed. Reg. at 38,063-64. Indeed, a

-13-

number of other circuits have recognized that the passage in question "addresses the state's obligations to register sex offenders, not the sex offender's obligation to register with the state, a duty which is separate and independent . . . from the state's duty to implement SORNA." United States v. Trent, 654 F.3d 574, 587 (6th Cir. 2011); see, e.g., United States v. Guzman, 591 F.3d 83, 94 (2d Cir. 2010) ("[T]he Attorney General has specified that an offender's obligation to register is not contingent on any jurisdiction's implementation of SORNA."); Gould, 568 F.3d at 463-64 (holding that SORNA's "requirements to register and maintain registration are not expressly conditioned on a State's implementation of the Act"); see also 75 Fed. Reg. at 81,850 (distinguishing between SORNA's immediately applicable offender-registration requirements and the separate jurisdictional-implementation standards). We agree.

Having determined that the SMART Guidelines are valid and do not condition retroactivity on the jurisdiction's implementation of SORNA, we conclude that Whitlow was subject to SORNA's registration requirements when he moved from the District of Columbia to Massachusetts in 2009 and then failed to register as a sex offender in Massachusetts. See Mass. Gen. Laws ch. 6, §§ 178C-178Q. Consequently, he was properly subject to criminal liability under § 2250(a) for failing to satisfy those requirements.

-14-

### III. Conclusion

For the foregoing reasons, we <u>affirm</u> the denial of Whitlow's motion to dismiss the indictment.