UNITED STATES, Appellee

v.

William E. NEWTON Jr., Specialist
U.S. Army, Appellant

No. 14-0415

Crim. App. No. 20110499

United States Court of Appeals for the Armed Forces

Argued November 19, 2014

Decided February 25, 2015

RYAN, J., delivered the opinion of the Court, in which BAKER, C.J., ERDMANN and STUCKY, JJ., and COX, S.J., joined.


Counsel

For Appellant: William E. Cassara, Esq. (argued); Captain Patrick J. Scudieri (on brief); Captain James S. Trieschmann Jr.

For Appellee: Captain Daniel M. Goldberg (argued); Colonel John P. Carrell and Lieutenant Colonel James L. Varley (on brief).

Military Judges: Jacqueline L. Emanuel and David H. Robertson


**THIS OPINION IS SUBJECT TO REVISION BEFORE FINAL PUBLICATION.**

Judge RYAN delivered the opinion of the Court.

Contrary to his pleas, a general court-martial composed of officer and enlisted members convicted Appellant of rape of a child under the age of twelve, indecent acts, wrongfully sending a lewd picture to a child under the age of eighteen, and knowingly failing to register as a sex offender as required by the Sex Offender Registration and Notification Act (SORNA), 18 U.S.C. § 2250(a) (2006), in violation of Articles 120 and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 920, 934 (2006). The timeframe during which the SORNA violation was alleged to have occurred was between October 1, 2009, and July 29, 2010.

The Court of Criminal Appeals (CCA) modified some specifications not relevant to this appeal, and then affirmed the remaining findings and sentence as modified.

We granted review of the following issue:

> WHETHER THE SEX OFFENDER REGISTRATION AND NOTIFICATION ACT (SORNA), 18 U.S.C. § 2250(a) (2006), APPLIED TO APPELLANT AS A RESULT OF EITHER THE ATTORNEY GENERAL'S 2007 INTERIM RULE OR HIS 2008 GUIDELINES. SEE, E.G., UNITED STATES v. LOTT, 750 F.3d 214 (2d Cir. 2014); UNITED STATES v. REYNOLDS, 710 F.3d 498 (3d Cir. 2013).

The 2008 Sentencing, Monitoring, Apprehending, Registering, and Tracking (SMART) Guidelines provide, as is relevant to the instant case, that an individual convicted of any of the statutorily defined sex offenses before the date that SORNA took

effect is required to register as a sex offender under SORNA.

The National Guidelines for Sex Offender Registration and

Notification, 73 Fed. Reg. 38,030, 38,046 (July 2, 2008)

[hereinafter 2008 SMART Guidelines].  This retroactive

application provision is a substantive rule that was promulgated

pursuant to the Attorney General's statutory authority to make

SORNA's registration requirement apply to pre-act offenders.  42

U.S.C. § 16913(d) (2012).  Further, this rule was promulgated

according to proper notice and comment procedures as required by

§ 553 of the Administrative Procedure Act (APA), 5 U.S.C. § 553

(2012).  Accordingly, Appellant had a duty to register as a sex

offender under SORNA, and we need not address the question

whether the Attorney General had good cause to forego the notice

and comment procedures when promulgating the 2007 Interim Rule.[1]

Applicability of the Sex Offender Registration and Notification

Act, 72 Fed. Reg. 8894 (Feb. 28, 2007) (codified at 28 C.F.R.

---

[1] There is a split among the federal circuits on the question whether the Attorney General had "good cause" to forego the required notice and comment procedures for the 2007 Interim Rule under 5 U.S.C. § 553(b)(3)(B).  Compare United States v. Brewer, 766 F.3d 884, 887-90 (8th Cir. 2014), United States v. Reynolds, 710 F.3d 498, 509 (3d Cir. 2013), United States v. Johnson, 632 F.3d 912, 928 (5th Cir. 2011), United States v. Valverde, 628 F.3d 1159, 1165-66 (9th Cir. 2010), and United States v. Cain, 583 F.3d 408, 422-24 (6th Cir. 2009), with United States v. Dean, 604 F.3d 1275, 1281-82 (11th Cir. 2010), and United States v. Gould, 568 F.3d 459, 469-70 (4th Cir. 2009).  Because we hold that the 2008 SMART Guidelines created an enforceable substantive rule requiring Appellant to register under SORNA, we merely note -- and need not join -- the circuit split on the 2007 Interim Rule.  See Lott, 750 F.3d at 217.

pt. 72) [hereinafter 2007 Interim Rule]; see United States v. Lott, 750 F.3d 214, 217 (2d Cir. 2014); United States v. Whitlow, 714 F.3d 41, 45 (1st Cir. 2013).

## I.  FACTUAL BACKGROUND

On October 2, 1995, Appellant pleaded guilty in Missouri Circuit Court to a charge of statutory rape of a fourteen-year-old girl.  He received two years' probation.  On October 2, 1995, and November 6, 1995, Appellant signed forms issued by the Missouri Department of Public Safety that confirmed his obligation to register in Missouri as a sex offender and to inform the chief law enforcement official of the county with jurisdiction over his new residence or address if he moved. Appellant began active duty in the Army on April 23, 1998.  On October 1, 2009, the Army sent to Appellant, then stationed at Fort Jackson, South Carolina, permanent change of station orders to report to Fort Bliss, Texas, on November 10, 2009.  He did not register as a sex offender upon his arrival in Texas in early November 2009; Appellant registered nine months later, on July 29, 2010, after he was contacted by the local police regarding his failure to register.

## II.  THE ATTORNEY GENERAL'S IMPLEMENTATION OF SORNA

On July 27, 2006, SORNA became effective.  Pub. L. No. 109-248, 120 Stat. 587 (2006) (codified at 18 U.S.C. § 2250 and 42 U.S.C. §§ 16911-29).  On February 28, 2007, the Attorney General

4

published the 2007 Interim Rule. 2007 Interim Rule, 72 Fed. Reg. at 8894. Citing 42 U.S.C. § 16913(d), the Attorney General declared, "SORNA applies to all sex offenders (as the Act defines that term) regardless of when they were convicted." 2007 Interim Rule, 72 Fed. Reg. at 8896. The Attorney General explained that the 2007 Interim Rule "serves the narrower, immediately necessary purpose of foreclosing any dispute as to whether SORNA is applicable where the conviction for the predicate sex offense occurred prior to the enactment of SORNA." Id. The Attorney General invoked the "good cause" exception to forego the notice and comment procedures required by § 553(b)(3)(B) of the APA and declared that the 2007 Interim Rule was effective immediately. 2007 Interim Rule, 72 Fed. Reg. at 8896. The Attorney General noted, however, that he would "hereafter issue general guidelines to provide guidance and assistance to the states and other covered jurisdictions in implementing SORNA, as was done under the Wetterling Act, see 64 [Fed. Reg.] 572 (Jan. 5, 1999), and may also issue additional regulations as warranted." Id.

A few months later, on May 30, 2007, the Attorney General published the notice of proposed rulemaking for what became the 2008 SMART Guidelines in the Federal Register; he took comments on the proposed guidelines until August 1, 2007. The National Guidelines for Sex Offender Registration and Notification, 72

Fed. Reg. 30,210-34 (proposed May 30, 2007) [hereinafter Proposed SMART Guidelines].  The notice of proposed rulemaking cited 42 U.S.C. § 16913(d) as the basis of the Attorney General's power to make a rule specifying that SORNA's registration requirement applies retroactively.  Id. at 30,212. The Attorney General published the final 2008 SMART Guidelines on July 2, 2008.  2008 SMART Guidelines, 73 Fed. Reg. 38,030.[2] The 2008 SMART Guidelines cite the congressional directive in SORNA, 42 U.S.C. § 16912(b), that the Attorney General issue guidelines to "interpret and implement" SORNA as the authority for his rulemaking.  2008 SMART Guidelines, 73 Fed. Reg. at 38,030.  In responding to comments regarding the requirement that pre-act offenders must register, the Attorney General specifically described how the 2008 SMART Guidelines addressed those concerns.  Id. at 38,031.  The Attorney General's position was that "SORNA's requirements took effect when SORNA was enacted on July 27, 2006, and they have applied since that time to all sex offenders, including those whose convictions predate SORNA's enactment."  Id. (citing 2007 Interim Rule, 72 Fed. Reg. at 8895-96).

---

[2] The Attorney General published the Final Rule on December 29, 2010.  Applicability of the Sex Offender Registration and Notification Act, 75 Fed. Reg. 81,849 (Dec. 29, 2010) (codified at 28 C.F.R. pt. 72) [hereinafter Final Rule].  The 2010 Final Rule post-dates Appellant's failure to register and therefore is not applicable to this case.

### III.  DISCUSSION

The Appellant challenges his conviction of knowingly failing to register as a sex offender on the ground that, during the charged timeframe, October 1, 2009, to July 29, 2010, no validly promulgated rule made SORNA's registration requirement applicable to those whose sex offense convictions predate SORNA's effective date.  Appellant contends that the retroactive application provision of the 2008 SMART Guidelines is merely interpretative, does not have the force of law, and thus does not make SORNA applicable to pre-act offenders.  We disagree.

### A.  SUBSTANTIVE AND INTERPRETATIVE RULES UNDER THE APA

This case, which requires traversing the field of administrative law, is one of first impression for this Court, but an area well covered by other federal appellate courts.  The APA distinguishes between two kinds of rules:  substantive rules and interpretative rules.  5 U.S.C. § 553(b)-(d).  A rule is substantive, and has the force of law, "only if Congress has delegated legislative power to the agency and if the agency intended to exercise that power in promulgating the rule." American Mining Cong. v. Mine Safety & Health Admin., 995 F.2d 1106, 1109 (D.C. Cir. 1993) (finding the 1947 Attorney General's Manual on the Administrative Procedure Act persuasive for defining a substantive rule).  A substantive rule "modifies or adds to a legal norm based on the agency's own authority.  That

7

authority flows from a congressional delegation to promulgate substantive rules, to engage in supplementary lawmaking." Snycor Int'l. Corp. v. Shalala, 127 F.3d 90, 95 (D.C. Cir. 1997).

An interpretative rule, by contrast, "reflects an agency's construction of a statute that has been entrusted to the agency to administer. The legal norm is one that Congress has devised; the agency does not purport to modify that norm." Id. at 94. An agency's interpretative rule is afforded some deference, United States v. Mead Corp., 533 U.S. 218, 233, 234-35 (2001), but "do[es] not have the force and effect of law" and is merely used by "an agency to advise the public of the agency's construction of the statutes and rules which it administers." Shalala v. Guernsey Memorial Hosp., 514 U.S. 87, 99 (1995) (quoting Chrysler Corp. v. Brown, 441 U.S. 281, 302 n.31 (1979)); 5 U.S.C. § 553(d).

When faced with the task of distinguishing between a substantive and an interpretative rule, most federal courts of appeals use some variation of the legal effects test. See American Mining Cong., 995 F.2d at 1112 (holding that the line between substantive and interpretative rules is drawn based on whether the rule has "legal effect"); accord Lott, 750 F.3d at 217 ("Substantive rules 'implement the statute.'" (quoting Chrysler Corp., 441 U.S. at 302-03)); Iowa League of Cities v.

EPA, 711 F.3d 844, 872-73 (8th Cir. 2013); Warshauer v. Solis, 577 F.3d 1330, 1337 (11th Cir. 2009); Dia Nav. Co., Ltd. v. Pomeroy, 34 F.3d 1255, 1264-65 (3d Cir. 1994); Metro. Sch. Dist. v. Davila, 969 F.2d 485, 489-90 (7th Cir. 1992).  The critical question under the legal effects test is whether the rule imposes a duty on affected parties.  Cf. Chrysler Corp., 441 U.S. at 301-02 n.31 (noting that although there is no definition for a substantive rule in the APA, a substantive rule is one "'affecting individual rights and obligations'" (quoting Morton v. Ruiz, 415 U.S. 199 (1974))).  If it does, the rule is substantive.  Snycor, 127 F.3d at 95; Erringer, 371 F.3d at 630; see also Gen. Elec. Co. v. EPA, 290 F.3d 377, 382 (D.C. Cir. 2002).  This inquiry looks primarily at the language of the statute to determine the substance of the congressional enactment and the scope of the agency's delegated authority, then compares this to the language of the rule.  See, e.g., Snycor, 127 F.3d at 95.

 B.  APPLICATION OF THE LEGAL EFFECTS TEST TO THE 2008 SMART GUIDELINES

This Court reviews de novo the question whether an agency's rule is substantive or interpretative as a matter of law.  See Erringer, 371 F.3d at 629.  The retroactive application provision of the 2008 SMART Guidelines, which is the only aspect

of the 2008 SMART Guidelines we consider here, constitutes a substantive rule.

The relevant provisions of SORNA are 42 U.S.C. § 16912(b) and § 16913(d). In § 16912(b), Congress granted the Attorney General general rulemaking authority: "The Attorney General shall issue guidelines and regulations to interpret and implement [SORNA]." Section 16913(d) deals specifically with retroactive application of SORNA's requirements and provides that "[t]he Attorney General shall have the authority to specify the applicability of the requirements of [SORNA] to sex offenders convicted before the enactment of this Act or its implementation in a particular jurisdiction." This is a clear delegation of congressional power to the Attorney General to promulgate rules in this area and, even without more, this appears sufficient to establish that the retroactive application provision of the 2008 SMART Guidelines is a substantive rule with legislative force. Accord Whitlow, 714 F.3d at 46 ("[W]e cannot ignore that § 16912(b) instructs the Attorney General to implement the subchapter, and the subchapter includes the specific option of making a rule on retroactivity." (quoting United States v. Stevenson, 676 F.3d 557, 564 (6th Cir. 2012)) (internal quotation marks omitted)); see also Lott, 750 F.3d at 217.

10

But there is more.  In 2012, the Supreme Court resolved a circuit split over the question whether SORNA's registration requirement took effect for pre-act offenders when SORNA was enacted or only after the Attorney General implemented a rule to that effect.  United States v. Reynolds, 132 S. Ct. 975, 980-81 (2012).  Interpreting 42 U.S.C. § 16913(d), the Supreme Court held that "the Act's registration requirements do not apply to pre-Act offenders until the Attorney General so specifies." Reynolds, 132 S. Ct. at 984 (emphasis added).

The Supreme Court's reading of § 16912(b) and § 16913(d) in Reynolds compels the conclusion both that Congress delegated the authority to promulgate a substantive rule to make SORNA apply to pre-act offenders to the Attorney General, and that § 16913(d) contains a legislative gap that Congress desired the Attorney General to fill; until he put forth a rule, SORNA's requirements did not apply to pre-act offenders.  See Reynolds, 132 S. Ct. at 981-82.

Moreover, the Attorney General did fill this gap, and explicitly invoked Congress's delegation of rulemaking authority when he established the 2008 SMART Guidelines, putting affected individuals on adequate notice as to the legislative authority for the rulemaking.  See American Mining Cong., 995 F.2d at 1112; Proposed SMART Guidelines, 72 Fed. Reg. at 30,210-34.  The notice of proposed rulemaking and the 2008 SMART Guidelines cite

11

42 U.S.C. § 16912(b) as the authority for putting forth the retroactive application rule announced in the 2008 SMART Guidelines. Proposed SMART Guidelines, 72 Fed. Reg. at 30,210; 2008 SMART Guidelines, 73 Fed. Reg. at 38,035-36. The broad delegation contained within 42 U.S.C. § 16912(b) subsumes within it the Attorney General's narrower power to specify that SORNA applies to pre-act offenders contained in 42 U.S.C. § 16913(d). See Lott, 750 F.3d at 217-18; Whitlow, 714 F.3d at 46; Stevenson, 676 F.3d at 563-64. And the notice of proposed rulemaking for the 2008 SMART Guidelines specifically references the Attorney General's power to make SORNA retroactive under § 16913(d). Proposed SMART Guidelines, 72 Fed. Reg. at 30,212; cf. Reynolds, 132 S. Ct. at 981-82.[3]

---

[3] Appellant argues that despite the plain statutory grant of delegated authority, and irrespective of both the Supreme Court's holding in Reynolds and the Attorney General's explicit reference to the authority delegated to him by SORNA, we should nonetheless hold that the retroactive application provision within the 2008 SMART Guidelines is interpretative because the Attorney General subjectively believed that the 2007 Interim Rule made SORNA apply retroactively before the 2008 SMART Guidelines were promulgated. The Attorney General's subjective belief is not controlling. See, e.g., General Motors Corp. v, Ruckelshaus, 242 F.2d 1561, 1565 (D.C. Cir. 1984) ("[T]he agency's own label, while relevant, is not dispositive."). The question is whether the 2008 SMART Guidelines imposed a duty and obligation in law and are, therefore, substantive. The 2008 SMART Guidelines impose a registration obligation that does not exist under the statute, irrespective of whether the 2007 Interim Rule temporarily imposed the same duty, and regardless of whether that Interim Rule properly invoked "good cause" to forego the required notice and comment procedures under 5 U.S.C. § 553(b)(3)(B). See United States v. Bridges, 741 F.3d 464, 468

We hold that the 2008 SMART Guidelines' retroactive application provision is a substantive rule. In so holding we are in good company. All of the federal courts of appeals that have considered this provision of the 2008 SMART Guidelines have treated it as substantive, not interpretative. Bridges, 741 F.3d at 468; Lott, 750 F.3d at 217; Whitlow, 714 F.3d at 46-48; Stevenson, 676 F.3d at 563-65; United States v. Utesch, 596 F.3d 302, 310 (6th Cir. 2010).

C.  ADMINISTRATIVE PROCEDURE ACT REQUIREMENTS

For a substantive rule to have the force and effect of law, an agency must also adhere to the procedural requirements set out in § 553 of the APA. Here, the Attorney General published the proposed 2008 SMART Guidelines in the Federal Register on May 30, 2007, and took comments on the proposed guidelines until August 1, 2007. 5 U.S.C. § 553(b)-(c); Proposed SMART Guidelines, 72 Fed. Reg. at 30,210. The proposed guidelines contained an entire draft of the proposed rule on retroactivity. 5 U.S.C. § 553(b)(3); Proposed SMART Guidelines, 72 Fed. Reg. at 30,212-13. The affected parties were put on fair notice as to what the rule would contain and were given an opportunity to present their views to the agency for consideration. See

---

(4th Cir. 2014); Lott, 750 F.3d at 217; Whitlow, 714 F.3d at 45; Stevenson, 676 F.3d at 563-65 (applying the 2008 SMART Guidelines as the substantive rule governing failures to register taking place after the guidelines were promulgated).

Whitlow, 714 F.3d at 47. Further, in the notice of proposed rulemaking, the Attorney General explicitly cited § 16912(b) and § 16913(d) as the congressionally delegated legislative authority for putting forth the 2008 SMART Guidelines and the retroactive application rule. 5 U.S.C. § 553(b)(2); Proposed SMART Guidelines, 72 Fed. Reg. at 30,210, 30,212 (citing 42 U.S.C. § 16913(d) as "SORNA section 113(d)"). On July 2, 2008, the Attorney General published the final version of the 2008 SMART Guidelines in the Federal Register. 5 U.S.C. § 553(d); 2008 SMART Guidelines, 73 Fed. Reg. at 38,030, 38,035-36. The published final rule contains direct responses to the various types of comments the Attorney General received regarding his expressed intent to extend SORNA's registration requirement to pre-act offenders. 5 U.S.C. § 553(c); 2008 SMART Guidelines, 73 Fed. Reg. at 38,032.

The 2008 SMART Guidelines were promulgated according to the requirements of the APA and without any procedural defect. See Lott, 750 F.3d at 219; Whitlow, 714 F.3d at 45; United States v. Mattix, 694 F.3d 1082, 1084 (9th Cir. 2012) (per curiam); United States v. Trent, 654 F.3d 574, 581 (6th Cir. 2011).

## IV. CONCLUSION

During the charged conduct in this case, the 2008 SMART Guidelines were in effect and Appellant was retroactively subject to SORNA's registration requirement under 18 U.S.C.

14

§ 2250(a) (2006).  The decision of the United States Army Court of Criminal Appeals is affirmed.